Daniel A. Schnapp
dschnapp@nixonpeabody.com
NIXON PEABODY LLP
55 West 46th Street
New York, NY 10036-4120
Tel: (212) 940-3000
Fax: (212) 940-3111

On Lu (*pro hac vice* forthcoming)
onlu@nixonpeabody.com
Andrew H. Winetroub (*pro hac vice* forthcoming)
awinetroub@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center
San Francisco, California 94111-3600
Tel: (415) 984-8200
Fax: (415) 984-8300

*Attorneys for Plaintiffs Red Rock Sourcing LLC and
Coronado Distributing LLC*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RED ROCK SOURCING LLC, a Nevada limited liability company; and CORONADO DISTRIBUTING LLC, a Colorado limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>JGX, LLC, a New York limited liability company; and LIBERTY INTERNATIONAL DISTRIBUTORS, LLC, a New York limited liability company,<br><br>Defendants. | Case No.:  1:21-cv-1054<br><br>**COMPLAINT FOR:**<br><br>**(1) VIOLATION OF 18 U.S.C. § 1962 (RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT);**<br><br>**(2) FEDERAL TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT;**<br><br>**(3) FEDERAL CONTRIBUTORY INFRINGEMENT UNDER THE LANHAM ACT;**<br><br>**(4) FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION UNDER THE LANHAM ACT;** |

**(5) FALSE ADVERTISING UNDER THE LANHAM ACT;**

**(6) DECEPTIVE BUSINESS PRACTICES (N.Y. G.B.L. § 349);**

**(7) TRADEMARK INFRINGEMENT UNDER NEW YORK COMMON LAW;**

**(8) TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE UNDER NEW YORK COMMON LAW;**

**(9) UNFAIR COMPETITION UNDER NEW YORK COMMON LAW;**

**(10) UNJUST ENRICHMENT UNDER NEW YORK COMMON LAW; AND**

**(11) DILUTION BY TARNISHMENT (N.Y. G.B.L. § 360-l).**

**DEMAND FOR JURY TRIAL**

1.      Plaintiff Red Rock Sourcing LLC (hereinafter referred to as "**Red Rock**") and Plaintiff Coronado Distributing LLC (hereinafter referred to as "**Coronado**", and, together with Red Rock, the "**Plaintiffs**"), by and through their undersigned attorneys bring this Complaint against Defendants JGX, LLC (hereinafter referred to as "**JGX**") and Liberty International Distributors, LLC (hereinafter referred to as "**Liberty**", and, together with JGX, the "**Defendants**") for violation of 18 U.S.C. § 1962 (Racketeer Influenced and Corrupt Organizations Act); trademark infringement, contributory trademark infringement, false designation of origin and unfair competition under the Lanham Act, and false advertising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.; deceptive business practices under the New York General Business Law; trademark infringement, tortious interference with prospective economic relations, unfair competition, unjust

enrichment, and dilution under New York common law; and dilution by tarnishment under the New York General Business Law.

2.      This case arises out of Defendants' shocking, illegal, and fraudulent scheme at the height of the COVID-19 pandemic to enrich themselves with callous disregard to the public safety and health of the American people.  In carrying out their wrongful plan to manufacture, import, distribute, and sell unlicensed and unauthorized hand sanitizer, Defendants misappropriated the valuable trademarks of a trusted hand sanitizer brand, and repeatedly misrepresented their right to use such marks.  As a result, Defendants are responsible for the importation and sale of hundreds of thousands of bottles of illicit and potentially dangerous hand sanitizer that entered United States commerce, and may still be circulating in commerce, while infringing the URBĀNE BATH & BODY marks.

3.      Moreover, following a number of shipments of the infringing products, Defendants' conduct led to a shipment of hand sanitizer being refused entry at the port of entry and added to the Food and Drug Administration's ("**FDA**") list of hand sanitizers that consumers should not use or be imported into the United States.  These activities not only exploited the vulnerabilities and fears engendered by the pandemic, and in so doing created a risk to public health, Defendants have also destroyed Plaintiffs' valuable intellectual property and business reputations.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Coronado and Red Rock's claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) because the claims at issue arise under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*  In addition, supplemental jurisdiction over the related state law claims is conferred upon this Court by 28 U.S.C. § 1367(a).

5.      This Court has personal jurisdiction over Defendants, including under N.Y.C.P.L.R. Sections 301 and 302, because, upon information and belief, Defendants are citizens of this State; have regularly transacted, and continue to transact, business in this State; contracted to supply goods and/or services in this State; are responsible for the counterfeit goods and/or property at issue likely being located in this State; are causing tortious injury by an act in this State; and are causing tortious injury in this State by an act outside this State where it regularly does or solicits business,

engages in other persistent courses of conduct, and/or derives substantial revenue from goods used or consumed, or services rendered, in this State.

6.    The exercise of personal jurisdiction over these Defendants comports with due process.

7.    Venue is proper in this judicial district and Court pursuant to 28 U.S.C. § 1391 because a substantial part of the acts complained of herein occurred in this judicial district, and Defendants are subject to personal jurisdiction in this judicial district as aforesaid.

## THE PARTIES

8.    Plaintiff Coronado Distributing LLC is a Colorado limited liability company with a principal place of business located at 22354 Uintah Road, Lone Tree, Colorado 80124.

9.    Plaintiff Red Rock Sourcing LLC is a Nevada limited liability company with a principal place of business located at 404 Lake Windemere Street, Las Vegas, Nevada 89138.

10.    Defendant JGX, LLC is a New York limited liability company with a principal place of business in Kings County, New York.

11.    Defendant Liberty International Distributors, LLC is a New York limited liability company with a principal place of business in Albany County, New York.

## FACTUAL BACKGROUND

### *The Rights in and to the URBĀNE Marks and Brand*

12.    Red Rock and Coronado are engaged in the manufacture, marketing, sale, and distribution of hand sanitizer; fragranced body care products such as shower gels, bath gel, and body scrubs; and non-medical bath bombs and salts.  Red Rock and Coronado often work together in developing, promoting, and selling these products to consumers nationwide.

13.    Coronado is the registered owner of U.S. Trademark Registration No. 6,068,164, registered on June 2, 2020, for the mark URBĀNE BATH & BODY registered in connection with *Fragranced body care preparations, namely, shower gels, bath gel, body scrubs; Bath bombs; Bath salts, not for medical purposes; Bath and shower gels and salts not for medical purposes* in Class 3 with a date of first use of August 1, 2019 (the "**'164 Registration**").  A copy of the registration certificate for the '164 Registration is attached hereto as **Exhibit A**.

-4-
COMPLAINT

14.     Since August 1, 2019, Coronado has exclusively and continuously used in U.S. commerce its distinctive URBĀNE BATH & BODY mark in connection with the sale of *Fragranced body care preparations, namely, shower gels, bath gel, body scrubs; Bath bombs; Bath salts, not for medical purposes; Bath and shower gels and salts not for medical purposes* in U.S. commerce.

15.     Coronado is also the listed owner of U.S. Trademark Application Serial No. 90/303,539, filed on November 6, 2020, for the URBĀNE BATH & BODY word mark in connection with *Hand-sanitizing preparations* in Class 5, and claiming a date of first use of at least as early as April 2020 (the "**'539 Application**").  A copy of the application for the '539 Application is attached hereto as **Exhibit B**.

16.     In addition, Coronado is the listed owner of U.S. Trademark Application Serial No. 90/365,926, filed on December 8, 2020, for the URBĀNE BATH & BODY logo mark in connection with *Hand-sanitizing preparations* in Class 5 (claiming a date of first use of at least as early as April 2020), and with *Fragranced body care preparations, namely, shower gels, bath gel, body scrubs; Bath bombs; Bath salts, not for medical purposes; Bath and shower gels and salts not for medical purposes* in Class 3 (claiming a date of first use of at least as early as August 2019) (the "**'926 Application**", and, collectively with the '164 Registration and the '539 Application, the "**URBĀNE Marks**").  A copy of the application for the '926 Application is attached hereto as **Exhibit C**.

17.     Since at least as early as April 2020, Coronado has continuously used its distinctive URBĀNE BATH & BODY mark in connection with the sale of *Hand-sanitizing preparations* in U.S. commerce.

18.     Coronado is the owner of all intellectual property rights in and to its distinctive URBĀNE Marks, including without limitation the '164 Registration, '539 Application, and the '926 Application.

19.     Through Coronado's continuous use of the URBĀNE BATH & BODY mark, it has also established common law rights in and to its mark for use with at least those goods set forth in the URBĀNE Marks as referenced herein.  True and correct images showing use of the marks are

1  attached hereto as **Exhibit D**.  Such common law rights and the goodwill in and to the URBĀNE

2  BATH & BODY mark, together with the URBĀNE Marks, are collectively referred to herein as

3  the "**URBĀNE Brand**".

4  <u>***The Covid-19 Pandemic and Development of Hand Sanitizer Under the URBĀNE Brand***</u>

5       20.     The Covid-19 pandemic has been a once-in-a-lifetime catastrophe that has wrought

6  illness and death around the world.  The pandemic reached the United States in early 2020.

7       21.     Americans were forced to rapidly prepare for the inevitable spread of the virus.  In

8  the United States, demand for a wide range of protective equipment and essential personal goods

9  surged.  This surge in demand coincided with disruption to global supply chains, retail businesses

10 shutting their doors, and workers confining themselves to their homes.

11      22.     As a result, a significant number of communities and retail outlets experienced

12 shortages of highly sought after goods such as toilet paper, various nonperishable foods, and hand

13 sanitizer.  This period of time was also marked by significant uncertainty about Covid-19's impact

14 economically and on individuals' health and safety.

15      23.     It was at this time that Red Rock and Coronado commenced work on creating a hand

16 sanitizer that consumers acutely needed, and retailers were eager to supply.  Red Rock and

17 Coronado are both run by entrepreneurs with decades' worth of collective experience in sourcing,

18 producing, and distributing products for consumers.

19      24.     In its efforts to develop and produce hand sanitizer, Red Rock was building on its

20 expertise in sourcing materials, operating and expanding distribution networks, and developing and

21 growing relationships with customers.

22      25.     Accordingly, Plaintiffs determined that Red Rock would be the entity through which

23 hand sanitizer under the URBĀNE Brand would be brought to the public.  Red Rock was best suited

24 to manage development of the product, create the requisite supply chain, build out inventory, and

25 handle sales and distribution to customers.  In fact, Red Rock successfully took each of those steps

26 and would have continued to build on them but for Defendants' wrongful acts.

27      26.     As the owner of the URBĀNE Brand, Coronado invested heavily in developing the

28 brand prior to the onset of Covid-19.

27.     As a result of Coronado's development of and investment in the URBĀNE Brand, Plaintiffs were able to go to market with a hand sanitizer that bore an established mark that retailers and consumers could readily trust and identify.

28.     Ultimately, Plaintiffs' efforts led to the development of a hand sanitizer that met the needs of consumers and the market.  The hand sanitizer Plaintiffs' created was at least 70% alcohol, made in the United States, and ready for production and distribution.

29.     In addition to Plaintiffs successfully developing an urgently needed hand sanitizer, Coronado had already established the URBĀNE Brand in connection with other personal care goods, particularly bath products.  As a result, Plaintiffs were prepared to go to market more quickly than many potential competitors, and with a high quality hand sanitizer under an established brand in use by early April 2020.

30.     In order to meet consumers' urgent needs and the market's overwhelming demand for high quality hand sanitizer, Red Rock imported large volumes of bottles from its international sources and worked with a bottling company in Utah to fill those bottles with hand sanitizer bearing the URBĀNE Brand.

31.     At that point, Red Rock was well positioned to bring critically needed hand sanitizer to the consuming public at the outset of the Covid-19 pandemic.  In fact, Red Rock successfully began selling hand sanitizer under the URBĀNE Brand in April 2020, just as the virus commenced its harrowing first peak in the United States.

### *Defendants Misappropriate the URBĀNE Brand to Produce Counterfeit Hand Sanitizer*

32.     As a result of Defendants' actions, as set forth herein, the URBĀNE Brand was irreparably tarnished and its growth trajectory halted almost overnight.

33.     Beginning in or about late April 2020, JGX and Liberty worked together to cause hundreds of thousands of bottles of hand sanitizer bearing counterfeit imitations of the URBĀNE Brand to be produced and imported into the United States, many of which are not accounted for and are likely still circulating in interstate commerce.  As a result, a specific and ongoing threat of repetition of the wrongful acts committed by these Defendants persists.  The unauthorized and

illegal hand sanitizer product(s) produced as a result of Defendants' actions and bearing a spurious mark identical to or substantially indistinguishable from the URBĀNE Brand are referred to herein as the "**Disputed Products**".

34.     The Disputed Products were, upon information and belief, ultimately sold to consumers who were innocently ignorant of the fact that the Disputed Products included infringing uses of the URBĀNE Brand and were manufactured in Mexico (as opposed to genuine URBĀNE hand sanitizer that is produced entirely in the United States).

35.     Defendants' illegal conduct was precipitated by contacts with Rigz, LLC, a company based out of Lake Havasu City, Arizona ("**Rigz**"). Prior to the outset of the Covid-19 pandemic, Red Rock had established a business relationship with Rigz. Red Rock's primary point of contact at Rigz was Anthony Carelli ("**Carelli**"), a sales executive at Rigz.

36.     Through that relationship, Red Rock and Rigz regularly communicated regarding their respective distribution businesses and opportunities they observed in the market. Shortly after Red Rock commenced its production of hand sanitizer under the URBĀNE Brand, based on this foundation of trust and overlapping interests, Red Rock began selling the hand sanitizer to Rigz.

37.     Red Rock's early sales of URBĀNE hand sanitizer to Rigz were robust. In fact, in the first three months of sales, commencing in early April 2020, Red Rock sold more than $2,000,000 worth of hand sanitizer under the URBĀNE Brand to Rigz.

38.     In turn, Rigz successfully placed URBĀNE hand sanitizer into a number of national businesses, including Pilot Travel Centers and Flying J Truck Stops, with a combined 1,700 stores, and Love's Travel Stops, which has more than 500 locations across the country. In a short period of time following its launch, URBĀNE hand sanitizer was successfully growing its presence in the market and generating significant revenues and profits.

39.     Beyond Red Rock's sales of URBĀNE hand sanitizer to Rigz, Red Rock also sold hand sanitizer under the URBĀNE Brand to customers like Tractor Supply Company. Early in the pandemic, URBĀNE hand sanitizer was in Tractor Supply Company's approximately 1,900 stores.

40.     At the earliest stages of the pandemic, Red Rock was already demonstrating its ability to provide URBĀNE hand sanitizer to the market, even as it was ramping up its long-term product and distribution capabilities.

41.     As a result of such early and rapid success with selling URBĀNE hand sanitizer, Red Rock sourced and imported from China, 2,000,000 empty bottles to package URBĀNE hand sanitizer.

42.     Without Red Rock or Coronado's knowledge, Rigz began looking for other sources to supply hand sanitizer.  Upon information and belief, Rigz sought hand sanitizer from other vendors with the intent to use the URBĀNE Brand on that hand sanitizer.  Rigz did not request, seek, or, upon information and belief, care whether it had approval from Red Rock or Coronado to use the URBĀNE Brand.

43.     At no point did Red Rock or Coronado authorize, approve of, or acquiesce to Rigz soliciting or otherwise engaging in any business activities whatsoever using the URBĀNE Brand.

44.     In or around late April 2020, Carelli, on behalf of Rigz, contacted Jack Grazi, principal of JGX, regarding Rigz's interest in and need for hand sanitizer.

45.     JGX is a sophisticated apparel company with expertise in and a history of obtaining trademarks, including multiple trademark registrations relating to athletic apparel.  Despite the apparent incongruence with its core business, and the large volume of hand sanitizer Rigz was requesting, JGX took part in discussions with Rigz regarding potentially sourcing hand sanitizer.

46.     The business discussions between JGX and Rigz led to Rigz issuing a purchase order to JGX for hundreds of thousands of units of hand sanitizer under trademarks and/or designations identical to or substantially indistinguishable from the URBĀNE Brand (the "**Purchase Order**"). Upon information and belief, the Purchase Order called for the production of approximately seven hundred thousand (700,000) units of hand sanitizer under the counterfeit URBĀNE Brand.

47.     Prior to completing the Purchase Order with Rigz, JGX never contacted Coronado, the owner of the URBĀNE Brand, to inquire as to whether Rigz had the authority to contract for the manufacture, distribution, and sale of URBĀNE hand sanitizer.

48.   Coronado never approved of or consented to Rigz using the URBĀNE Brand.  As such, Rigz could not have provided JGX with any evidence that it was, in fact, authorized to issue a purchase order for URBĀNE hand sanitizer,

49.   Subsequently, JGX willingly proceeded to use a counterfeit imitation of the URBĀNE Brand on a massive scale.  A simple search on Google, let alone a trademark database search, as would be expected of an entity like JGX that owns multiple trademark registrations, would have revealed the illegality of its business purpose under the Purchase Order.

50.   Around the time JGX completed the Purchase Order with Rigz, JGX, upon information and belief, made use of email, telephone calls, and/or other wired transmissions to contact David Amoyelle ("**Amoyelle**"), principal of Liberty, an entity formed in or around April 2020 and lacking any significant previous experience or expertise in the production of hand sanitizer.  Upon information and belief, JGX had never worked with Liberty before but made contact because of Liberty's manufacturing contacts in Mexico.

51.   Upon information and belief, in order to secure Liberty's assistance in manufacturing the URBĀNE hand sanitizer sought by Rigz, JGX provided Liberty with the Purchase Order Rigz issued for hundreds of thousands of bottles.  JGX also introduced Liberty to Carelli and Rigz during this time.  These communications were made, upon information and belief, using email, telephone calls, and/or other wired transmissions during late April and/or early May 2020.

52.   For use in producing hand sanitizer under a counterfeit imitation of the URBĀNE Brand, Carelli provided Liberty with the artwork necessary to depict and use the URBĀNE Brand, including the URBĀNE logo.  A true and correct copy of the fraudulent URBĀNE branding on the Disputed Products is attached hereto as **Exhibit E**.

53.   Upon information and belief, Amoyelle questioned whether JGX had authority to use the URBĀNE Brand, yet he and Liberty willingly proceeded to associate with JGX in the production, distribution, and importation of counterfeit URBĀNE hand sanitizer.  At this point, all of the participants in the scheme to produce, distribute, and sell illegal and unauthorized hand

sanitizer under counterfeit imitations of the URBĀNE Brand were acquainted and aligned for their illicit purpose, and with complete disregard for Coronado's ownership of the URBĀNE Brand.

54.     Prior to consummating its deal with JGX, Liberty never contacted Coronado, the owner of the URBĀNE Brand, to inquire as to whether JGX or Rigz had the authority to contract for the manufacture, distribution, and sale of URBĀNE hand sanitizer.  As with JGX, Liberty willfully disregarded its ability to discover Coronado's ownership of the URBĀNE Brand through readily available public sources.

55.     In late April or early May 2020, Liberty communicated with a manufacturer in Mexico, Tropicosméticos S.A. de C.V. ("Trop"), regarding the production and bottling of hand sanitizer to fill the Purchase Order using trademarks and/or designations identical to or substantially indistinguishable from the URBĀNE Brand.  This arrangement led to the manufacture, importation, and distribution of hundreds of thousands of units of Disputed Products.

56.     In connection with trafficking the Disputed Products, Defendants used a spurious mark that is identical with, or substantially indistinguishable from, the URBĀNE Brand, including but not limited to the '164 Registration, and that is likely to, and did in fact, confuse and/or deceive consumers.

57.     Upon information and belief, Trop provided Liberty with an initial shipment of approximately 200,000-250,000 units of the Disputed Products in or around late April or early May 2020.  After Liberty and JGX successfully imported the roughly quarter million units and delivered the Disputed Products to Rigz, Rigz duly paid JGX under the Purchase Order.  In turn, JGX paid Liberty.  Upon information and belief, these payments were effectuated using the mail and/or wired transmissions.

58.     Despite having no authorization or approval to use the URBĀNE Brand, both JGX and Liberty were making money by virtue of their coordinated and unauthorized use of it.

59.     Such distribution by JGX and Liberty enabled Rigz to sell the Disputed Products to, at a minimum, Pilot Travel Centers, which are part of a nationwide chain of truck stops.

60.     Liberty and JGX intentionally directed the production, importation, and distribution of the Disputed Products, all of which facilitated further dissemination of the infringing Disputed Products.

61.     Upon information and belief, as a result of what Amoyelle considered to be a successful first shipment of Disputed Products from Trop, Liberty proceeded to work with Trop to produce, at a minimum, the remainder of the units called for under the Purchase Order.

***Defendants' Scheme Breaks Down But Production of Counterfeit Hand Sanitizer Continues***

62.     Rigz originally purchased hand sanitizer under the URBĀNE Brand from Red Rock, and then initiated the chain of events that led to JGX and Liberty carrying out their fraudulent scheme.   JGX is an athletic apparel company that nevertheless agreed to participate in the manufacture and distribution of hundreds of thousands of bottles of hand sanitizer.   Liberty is a small company that Amoyelle founded shortly before Defendants' infringement commenced, which soon became involved in the counterfeiting scheme due to, upon information and belief, its manufacturing contacts in Mexico.

63.     Upon information and belief, JGX subsequently informed Liberty that the second part of the original Purchase Order had been cancelled by Rigz, at which point Liberty informed JGX that production had already commenced in Mexico.   Despite Rigz's rescission of the Purchase Order, Liberty and JGX continued to manage and handle the remaining units of Disputed Products produced by Trop.

64.     Since Liberty had already paid Trop a deposit for hand sanitizer that Rigz would no longer be purchasing, Liberty offered to sell the Disputed Products under production to JGX.   Upon information and belief, JGX declined Liberty's offer, and instead offered the remaining Disputed Products to Rigz at a discounted price.   Rigz rejected the offer.

65.     What Liberty and/or JGX did with these thousands of units of Disputed Products, and where such potentially harmful products are currently located, remains unknown.

***Counterfeit Hand Sanitizer Detained by the FDA***

66.     In early July 2020, a shipment of Disputed Products was shipped from Trop in Mexico to the United States.  The Disputed Products were stopped and, upon information and belief, refused entry by the FDA at the port of entry.

67.     The FDA flagged all products arriving from Trop because it had allegedly used methanol in hand sanitizer formulas for other brands.  The original hand sanitizer solution sold under the URBĀNE Brand did not and does not contain methanol.

68.     The FDA placed hand sanitizer under the URBĀNE Brand on its list of "hand sanitizers consumers should not use" and added the product to its "import alert" to stop the product from entering the country (collectively, the "**FDA Order**").  On its website, the FDA identifies the product subject to the FDA Order as "Urbane Bath and Body Hand Sanitizer", with Trop listed as the "Manufacturer" and Liberty as the "Distributor".

69.     The FDA Order, and the FDA's targeting of hand sanitizer products containing or allegedly containing methanol more generally, was included in numerous news reports and widely disseminated to the public.

70.     The FDA Order stated that "[t]he agency continues to warn the public not to use specific products listed."  It also included a statement from the FDA Commissioner: "Consumers must also be vigilant about which hand sanitizers they use, and for their health and safety we urge consumers to immediately stop using all hand sanitizers on the FDA's list of dangerous hand sanitizer products . . . We remain extremely concerned about the potential serious risks of alcohol-based hand sanitizers containing methanol. Producing, importing and distributing toxic hand sanitizers poses a serious threat to the public and will not be tolerated."

71.     The "serious threat to the public" is described in the FDA Order as the "toxic effects of methanol poisoning. Substantial methanol exposure can result in nausea, vomiting, headache, blurred vision, permanent blindness, seizures, coma, permanent damage to the nervous system or death. Although all persons using these products on their hands are at risk for methanol poisoning, young children who accidently ingest these products and adolescents and adults who drink these products as an alcohol (ethanol) substitute, are most at risk."

72.     As a result, the URBĀNE Brand is, and will continue to be, irreparably tarnished by its association with the FDA Order.  Sales and consumer demand for hand sanitizer under the URBĀNE Brand have plummeted precipitously since the FDA Order was issued.

### *The FDA Order Tarnishes the URBĀNE Brand and Plaintiffs' Businesses*

73.     Prior to the FDA Order, Red Rock engaged in discussions with Rite Aid, which has roughly 2,500 stores in the United States, regarding widespread distribution of hand sanitizer under the URBĀNE Brand.  Those discussions progressed significantly, and a final contract for the sale of URBĀNE hand sanitizer was imminent.  The contract negotiations were able to proceed expeditiously in significant part because of the fact that the URBĀNE Brand was already in use and established in the market.

74.     Prior to finalizing and executing the contract, Red Rock learned of the FDA Order and, as a responsible business partner, brought it to the attention of Rite Aid.

75.     At that point, and as a direct result of the issuance of the FDA Order, Rite Aid called off negotiations with Red Rock.  As Rite Aid's representative put it in an August 11, 2020 email to Tom Bruss of Red Rock, "Your product is on the FDA recall list, we will not be bringing this product in."

76.     The loss of this business opportunity has prevented Red Rock from selling hand sanitizer under the URBĀNE Brand to thousands of stores and generating, at least, millions of dollars in revenue.

77.     The contemplated agreement with Rite Aid was just one of a number of potential business deals and sales channels that Red Rock was in the process of pursuing prior to the FDA Order, including but not limited to with IHG Hotels, Amazon, and Shopify.

78.     The FDA Order also resulted in Tractor Supply Company cancelling all of its orders with Red Rock for hand sanitizer under the URBĀNE Brand.  Prior to that point, Red Rock's business with Tractor Supply Company was strong and growing.

79.     The resulting damage to Coronado's URBĀNE Brand, as well as to Red Rock's business, is both substantial and lasting.  For example, due to Defendants' conduct and the resulting FDA Order, Red Rock is currently paying to store empty URBĀNE bottles worth $1,500,000, as

well as $100,000 worth of unused URBĀNE labels.  Such costs for Red Rock are ongoing and substantial, and would not have been necessary had it been able to continue selling hand sanitizer under the URBĀNE Brand, as it had done prior to Defendants' unlawful actions leading to the FDA Order.

80.     The principals of both Coronado and Red Rock have also had their business reputations damaged as a proximate result of the Defendants' wrongful conduct.  In particular, the FDA Order has harmed Plaintiffs in their subsequent business dealings, not only by immediately shutting down demand for hand sanitizer under the URBĀNE Brand, but also by undermining the credibility of both companies' products in general.

81.     Coronado has neither given permission nor licensed the right to Defendants to use the URBĀNE Brand in connection with the Disputed Products, and therefore, Defendants' unauthorized use of such marks constitutes, among other things, infringement, false designation of origin, and unfair competition.

82.     Coronado is the registered owner of the '164 Registration for the mark URBĀNE BATH & BODY.  Coronado's URBĀNE BATH & BODY mark and federal registration provides constructive notice of Coronado's rights in and to the URBĀNE Marks.

83.     As of the date of this Complaint, and notwithstanding having been put on notice of Coronado's rights in and to the URBĀNE Brand, Defendants have failed to account for, among other things, (i) the full scope of Disputed Products that were produced, (ii) the location of all Disputed Products imported into the United States, (iii) whether they have sold and/or are selling Disputed Products to consumers, and (iv) their earnings as a result of their wrongful and illegal conduct with respect to the URBĀNE Brand.

84.     Upon information and belief, Defendants offered for sale and/or sold in the same or similar channels of trade the Disputed Products using marks that are identical and/or confusingly similar to one or more of the URBĀNE Marks and the URBĀNE Brand on and for goods that are identical and/or similar to and directly compete with those offered by Coronado and Red Rock.

85.     Coronado's dates of first use relative to the URBĀNE Brand, in connection with at least the goods set forth within the '164 Registration for the URBĀNE Marks, precede the earliest

date Defendants can possibly claim as their date of first use of the infringing marks incorporated on or in connection with the Disputed Products.

86.     In particular, the '164 Registration has a constructive date of first use of August 1, 2019, which precedes the earliest date Defendants can possibly claim as their date of first use of the infringing marks incorporated on or in connection with the Disputed Products.

87.     Since Defendants have knowledge, or reasonably should have knowledge, of Coronado's rights in and to the URBĀNE Brand, upon information and belief, Defendants' ongoing and continued offering for sale and/or sale of the Disputed Products constitutes knowing, intentional, and willful infringement.

88.     Upon information and belief, Defendants' control over the manufacture, production, distribution, offering for sale and/or sale of the Disputed Products or otherwise use of marks that infringe one or more of the URBĀNE Marks has caused, or is likely to cause, confusion, mistake and/or deception amongst actual and potential consumers as to the source of the goods and services within the meaning of § 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), all to the severe detriment of Coronado.

89.     In view of the foregoing, Coronado and Red Rock, respectively, have been damaged and will continue to be damaged by virtue of Defendants' manufacture, production, distribution, offering for sale, and/or sale of the Disputed Products and use of infringing marks.

## **COUNT I**
### **Violation of 18 U.S.C. § 1962 (Racketeer Influenced Corrupt Organizations Act)**
### **(Plaintiff Coronado and Plaintiff Red Rock Against All Defendants)**
### **(18 U.S.C. § 1962)**

90.     Coronado and Red Rock re-allege the allegations contained in Paragraphs 1 through 89, as though fully set forth herein.

91.     As described more fully above, Defendants engaged in acts indictable for crimes enumerated under 18 U.S.C. § 1961(1)(B) which include, *inter alia*, acts of mail fraud, wire fraud, and trafficking in counterfeit goods.

92.     As described more fully above, Defendants engaged in a pattern of racketeering activity by, *inter alia*, executing a scheme to manufacture multiple rounds of Disputed Products

and, in turn, to import and distribute such products, bearing infringing copies of the URBĀNE Brand that the Defendants knew or reasonably should have known were unauthorized, for sale to customers and consumers who were defrauded by the scheme.

93.    Defendants perpetrated their fraud by use of the mails and/or wires.

94.    In connection with trafficking the Disputed Products, the Defendants used a spurious mark that is identical with, or substantially indistinguishable from, the URBĀNE Brand, including the '164 Registration, and that is likely to, and did in fact, confuse and/or deceive consumers.

95.    Defendants' fraudulent representations and misappropriation of the URBĀNE Brand, as described herein, were the legal and proximate cause of the damages suffered by the Coronado and Red Rock, respectively, as their successful and growing sales of hand sanitizer under the URBĀNE Brand would have continued but for the fraudulent acts of the Defendants.

96.    As a result of the foregoing, Coronado and Red Rock are entitled to three times their actual damages in an amount to be proven at trial, plus costs and attorneys' fees, pursuant to 18 U.S.C. § 1964.

**COUNT II**
**Trademark Infringement**
**(Plaintiff Coronado Against All Defendants)**
**(15 U.S.C. §1114(1))**

97.    Coronado re-alleges the allegations contained in Paragraphs 1 through 96, as though fully set forth herein.

98.    Without the authorization or consent of Coronado, the Defendants have used and, on information and belief, continue to use trademarks and/or designations that are identical, confusingly similar to, and/or a reproduction, copy or colorable imitation of one or more of the URBĀNE Marks.

99.    Further, Defendants, by and through, *inter alia*, their manufacture, production, distribution, importation, offering for sale, and/or sale of the Disputed Products in U.S. commerce are and have been directly competing with Coronado's sales, distribution, and advertisement of the very same or similar goods and under and through the URBĀNE Marks.

100.    Defendants' actions in, *inter alia*, manufacturing, producing, distributing, importing, offering for sale, and/or selling the Disputed Products in commerce has occurred in the face of and notwithstanding having been on, at a minimum, constructive notice of Coronado's rights in the URBĀNE Marks.

101.    Defendants' unauthorized use of trademarks and/or designations that are identical, confusingly similar to, a reproduction, copy or colorable imitation of one or more of the URBĀNE Marks and in connection with competing goods, is likely to cause consumer confusion, mistake, and/or deception in the relevant market(s) as to the origin of the goods and services, and/or as to whether Defendants are sponsored by/affiliated with, or are otherwise connected to Coronado, in violation of Section 32(1) of the Lanham Act, as amended, 15 U.S.C. § 1114(1).

102.    By using trademarks and/or designations that are identical, confusingly similar to, a reproduction, copy or colorable imitation of one or more of the URBĀNE Marks, and by manufacturing, producing, distributing, importing, offering for sale, and/or selling the Disputed Products to the public in connection with said marks and/or designations or confusingly similar variants thereof, for profit and without Coronado's authorization, Defendants are depriving Coronado of its exclusive right to control, use and otherwise benefit from its registered trademarks (along with other marks Coronado has applied for and/or uses at common law).  If permitted to continue, Defendants' actions will nullify Coronado's right to exclusive use of its registered trademarks, free from infringement, and will have a substantial and adverse effect, as they already have, on Coronado's existing and projected future interstate business for goods identified by the URBĀNE Marks.

103.    As a result of Defendants' infringing conduct, Coronado has suffered substantial damages in an amount to be proven at trial, as well as the continuing loss of the goodwill and reputation established by Coronado under its federally registered and other marks.  This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Coronado has no adequate remedy at law.  Coronado will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

104.     By using, without Coronado's authorization, trademarks and designations that are identical, confusingly similar to, a reproduction, copy or colorable imitation of one or more of the URBĀNE Marks and by manufacturing, producing, distributing, importing, offering for sale, and/or selling the Disputed Products to the public in connection with the infringing marks, Defendants have intentionally and knowingly infringed Coronado's rights, thus making this an exceptional case under 15 U.S.C. § 1117(a).

**COUNT III**
**Contributory Trademark Infringement**
**(Plaintiff Coronado Against All Defendants)**

105.     Coronado re-alleges the allegations contained in Paragraphs 1 through 104, as though fully set forth herein.

106.     Upon information and belief, Defendants had control over, among other things, the manufacture, importation, distribution, offering for sale, and sale of the Disputed Products and did so with the knowledge, or they had reason to have such knowledge, that they did not have the rights to the trademarks used or incorporated in and on the Disputed Products.

107.     By, *inter alia*, importing, distributing, offering for sale, and selling, despite knowing, or having reason to know, that they did not have the rights to the trademarks, Defendants have intentionally induced third-parties to infringe Coronado's rights in and to the URBĀNE Marks, and/or any and all marks associated therewith, by facilitating the further distribution and dissemination of the Disputed Products.

108.     Further, upon information and belief, Defendants knew, or had reason to know, that Rigz was engaged in infringing conduct when it ordered, planned to sell, and sold products bearing the URBĀNE Marks.

109.     These actions by Defendants constitute contributory trademark infringement.

110.     As a proximate result of Defendants' contributory infringement, Coronado has been damaged and will continue to suffer damage to its business, reputation, and goodwill.

111.     Defendants' unlawful actions entitle Coronado to compensatory and other applicable damages in an amount to be proven at trial.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT IV
### Unfair Competition and False Designation of Origin
### (Plaintiffs Coronado and Red Rock Against All Defendants)
### (15 U.S.C. §1125(a))

112.    Coronado and Red Rock re-allege the allegations contained in Paragraphs 1 through 111, as though fully set forth herein.

113.    Defendants' unauthorized use of trademarks and/or designations that are identical and/or confusingly similar to one or more of the URBĀNE Marks in connection with the Disputed Products, which are identical and/or highly related goods, is likely to cause confusion, mistake, and/or deception among the general public as to the origin of the goods, or as to whether Defendants are sponsored by, affiliated with, originated from or otherwise connected with Coronado and/or Red Rock, in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. §1125(a).

114.    As a result of Defendants' infringing conduct, Coronado and Red Rock have suffered substantial commercial and other damages in an amount to be proven at trial, as well as the continuing loss of the goodwill and reputation established by Coronado in its marks and Red Rock in its commercial use thereof.  This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which neither Coronado nor Red Rock has an adequate remedy at law.  Coronado and Red Rock will both continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

115.    By violating 15 U.S.C. §1125(a) through the use of trademarks and designations that are identical, confusingly similar to, a reproduction, copy or colorable imitation of one or more of the URBĀNE Marks in connection with the selling, offering for sale, distributing, and/or marketing of goods and services to the general public under and through the infringing marks, Defendants have intentionally and knowingly infringed Coronado's rights, thus making this an exceptional case under 15 U.S.C. § 1117(a).

## COUNT V
### False Advertising
### (Plaintiffs Coronado and Red Rock Against All Defendants)
### (15 U.S.C. § 1125(a)(1)(B))

116.   Coronado and Red Rock re-allege the allegations contained in Paragraphs 1 through 115, as though fully set forth herein.

117.   Defendants have made false and misleading statements of fact with respect to their authorization to distribute and sell the Disputed Products.

118.   Such false and misleading statements have actually deceived and/or have a tendency to deceive Coronado and Red Rock's current and prospective licensees, distributors, retailers, resellers and/or the general public.

119.   Defendants' false and misleading statements are material.

120.   Defendants have made such false and misleading statements with respect to their authorization to distribute and sell the Disputed Products in interstate commerce to current and prospective licensees, distributors, retailers and/or resellers.

121.   Coronado and Red Rock have been damaged by Defendants' false and misleading statements and, unless this conduct is enjoined, both Coronado and Red Rock's goodwill and reputation will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages.

122.   Defendants' unlawful actions constitute false advertisements, which entitles Coronado and Red Rock to damages under 15 U.S.C. § 1117 in an amount to be determined at trial, as well as exemplary damages and attorneys' fees and costs.

**COUNT VI**
**Deceptive Business Practices**
**(Plaintiffs Coronado and Red Rock Against All Defendants)**
**(N.Y. G.B.L. § 349)**

123.   Red Rock re-alleges the allegations contained in Paragraphs 1 through 122, as though fully set forth herein.

124.   Defendants were engaged in a consumer-oriented act or practice by promoting, importing, selling, offering to sell, and/or distributing the Disputed Products, which were designed for consumer use as hand sanitizer in the midst of a global pandemic.

125.    Defendants are not, in fact, licensed or authorized in any way whatsoever to promote, import, sell, offer to sell, and/or distribute the Disputed Products, yet they held themselves out as such in a misleading and material way.

126.    Red Rock and Coronado have suffered injury as a result of Defendants' representations as to their right to promote, import, sell, offer to sell, and/or distribute the Disputed Products, as such deceptive acts are directly responsible for, *inter alia*, the FDA Order that has prevented, and will continue to prevent, Red Rock from selling additional hand sanitizer under the URBĀNE Brand, has permanently damaged the reputation and goodwill of Coronado's URBĀNE Brand, and has greatly harmed the reputation and goodwill of Red Rock among its customers and business partners.

127.    As a result of the foregoing, Red Rock and Coronado are entitled to damages in an amount to be proven at trial, plus civil penalties pursuant to New York General Business Law §§ 349-c and 350-d.

## COUNT VII
### Trademark Infringement Under New York Common Law
### (Plaintiff Coronado Against All Defendants)

128.    Coronado re-alleges the allegations contained in Paragraphs 1 through 127, as though fully set forth herein.

129.    As set forth herein, Coronado owns all common law rights in and to the URBĀNE Brand.

130.    Coronado's use of the URBĀNE Brand, including the common law rights therein, for various goods and services rendered in commerce, including but not limited to hand sanitizer, has been substantially exclusive and continuous since the inception of the marks.

131.    The URBĀNE Brand is distinctive and representative of the goodwill built up by Coronado.

132.    By imitating and using the URBĀNE Brand in commerce in connection with *inter alia*, the manufacturing, importing, offering for sale, and sale of the Disputed Products, Defendants have infringed Coronado's common law trademark rights.

133.   Defendants' unlawful and improper actions, as set forth herein, are likely to cause confusion, mistake, or deception as to the source, origin, affiliation, sponsorship, and association of Defendants' goods and services and to mislead actual and prospective consumers into falsely believing that Defendants' hand sanitizer originates from or is otherwise connected with or sanctioned by Coronado when, in fact, it is not.

134.   As a direct and proximate result of Defendants' infringement, Coronado has sustained and is likely to continue to sustain substantial monetary damages and irreparable injury to its business, reputation, and goodwill, for which Coronado has no adequate remedy at law.

135.   By reason of the foregoing acts, Defendants are liable to Coronado for common law trademark infringement and Coronado is entitled to preliminary and permanent injunctive relief and monetary damages in an amount to be proven at trial.

### COUNT VIII
**Tortious Interference with Prospective Economic Advantage Under
New York Common Law
(Plaintiff Red Rock Against All Defendants)**

136.   Red Rock re-alleges the allegations contained in Paragraphs 1 through 135, as though fully set forth herein.

137.   During June and July, 2020, Red Rock had business relations with, among others, Rite Aid regarding widespread distribution of hand sanitizer under the URBĀNE Brand.  Those discussions advanced significantly such that a contract for the sale of significant amounts of URBĀNE hand sanitizer was imminent.  Rite Aid operates approximately 2,500 stores across the United States.  It was anticipated that this arrangement would be profitable for all involved.

138.   After discovering the existence of the FDA Order, at which point Red Rock was already in advanced business discussions with Rite Aid, Tom Bruss of Red Rock immediately and responsibly informed Rite Aid of the FDA Order so that all sides were aware of the material facts related to the contemplated transaction.  The FDA Order was issued as a direct result of Defendants' infringing and otherwise illegal activities.

139.   Following Red Rock's disclosure of the FDA Order to Rite Aid, Rite Aid terminated the contract negotiations with Red Rock.  An employee of Rite Aid informed Mr. Bruss of Red

Rock that the FDA Order was the reason why the contemplated contract could not be completed and executed.

140. Therefore, Defendants interfered with Red Rock's relationship with, at a minimum, Rite Aid by manufacturing, distributing, and attempting to import the unlicensed and unauthorized Disputed Products. Defendants' actions in manufacturing, distributing, and attempting to import the Disputed Products were intentional.

141. As set forth herein, Defendants used wrongful means to interfere with Red Rock's relationship with Rite Aid, including but not limited to, trademark infringement, false designation of origin, unfair competition, and deceptive business practices.

142. As a result of the foregoing, Red Rock's business relationship with Rite Aid was greatly damaged, thereby entitling Red Rock to damages in an amount to be proven at trial.

**COUNT IX**
**Unfair Competition Under New York Common Law**
**(Plaintiff Coronado Against All Defendants)**

143. Coronado re-alleges the allegations contained in Paragraphs 1 through 142, as though fully set forth herein.

144. As set forth herein, by using Coronado's URBĀNE Brand, including but not limited to Coronado's common law rights therein, in commerce in connection with the manufacturing, distributing, importing, offering for sale, and sale of the Disputed Products, Defendants' activities described herein improperly traded upon the goodwill and valuable rights in and to the URBĀNE Brand and constitute unfair competition under the common law of the State of New York.

145. Defendants' unlawful and improper actions, as set forth herein, are likely to cause confusion, mistake, or deception as to the source, origin, affiliation, sponsorship, and association of Defendants' goods and services and to mislead actual and prospective consumers into falsely believing that Defendants' hand sanitizer originates from or is otherwise connected with or sanctioned by Coronado when, in fact, it is not.

146.    As a direct and proximate result of Defendants' unfair competition, Coronado has sustained and is likely to continue to sustain substantial monetary damages and irreparable injury to its business, reputation, and goodwill, for which Coronado has no adequate remedy at law.

147.    Coronado is entitled to preliminary and permanent injunctive relief and monetary damages in an amount to be proven at trial.

## COUNT X
### Unjust Enrichment Under New York Common Law
### (Plaintiff Coronado Against All Defendants)

148.    Coronado re-alleges the allegations contained in Paragraphs 1 through 147, as though fully set forth herein.

149.    Upon information and belief, Defendants generated significant revenues as a result of their wrongful and illegal use of Coronado's URBĀNE Brand. However, Coronado received no benefit for the monies Defendants earned through misappropriating and infringing Coronado's intellectual property.

150.    As a result, Defendants were enriched at Coronado's expense, and it would be against equity and good conscience to allow the Defendants to keep the funds earned through their wrongful and illegal use of Coronado's intellectual property.

151.    As a result of the foregoing, Coronado is entitled to damages in an amount to be proven at trial.

## COUNT XI
### Dilution by Tarnishment Under New York Law
### (Plaintiff Coronado Against All Defendants)
### (N.Y. G.B.L. § 360-l)

152.    Coronado re-alleges the allegations contained in Paragraphs 1 through 151, as though fully set forth herein.

153.    As set forth herein, Coronado owns all right, title, and interest in and to the URBĀNE Brand.

154.    The URBĀNE Brand has a distinctive quality that is capable of dilution under New York law.

155.    The URBĀNE Brand is linked to Defendants' inferior products as a direct result of Defendants' unlicensed and unauthorized use of Coronado's URBĀNE Brand.  The URBĀNE Brand is also linked to the substantial negative associations and legal consequences that resulted from the FDA Order for which Defendants are responsible.

156.    As a result of the foregoing, Coronado is entitled to damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Coronado Distributing LLC and Red Rock Sourcing LLC respectfully request that this Court:

i.      Immediately, preliminarily, and permanently enjoin Defendants, and all persons acting in concert with them, including without limitation their officers, directors, employees, contractors, and any and all affiliates and current or potential business partners, and all persons purporting to act on their behalf or in active concert or in participation with them, from using or preparing to use Coronado's trademarks, including but not limited to the URBĀNE Brand, as well as any confusingly similar designations or marks, in any manner that violates or infringes Coronado's rights, and require Defendants and all participating persons to immediately and permanently discontinue their current infringing practices.

ii.     Immediately, preliminarily, and permanently enjoin Defendants, and all persons acting in concert with them, including without limitation their officers, directors, employees, contractors, and any and all affiliates and current or potential business partners, and all persons purporting to act on their behalf or in active concert or in participation with them, from any further development, distribution, marketing, manufacturing, shipping, or any other use or preparation for use in commerce of any hand sanitizer product identical or substantially similar to the Disputed Products.

iii.    Immediately, preliminarily, and permanently enjoin Defendants, and all persons acting in concert with them, including without limitation their officers, directors, employees, contractors, and any and all affiliates and current or potential business

partners, and all persons purporting to act on their behalf or in active concert or in participation with them, from making any representations, statements, or other communications, in any form, that suggest, whether expressly or by implication, that Defendants have any right to use, in any matter whatsoever, the URBĀNE Brand.

iv. Order Defendants to immediately collect and destroy, at Defendants' sole and exclusive expense, any and all units of the Disputed Products, or any products substantially similar thereto, wherever in the world they are located, and, upon completion, to certify in writing that such collection and destruction has occurred in accordance with the Court's Order.

v. Enter judgment in favor of Coronado and Red Rock, respectively, on each and every count they have asserted herein and award Coronado and Red Rock all monetary damages caused by the acts forming the basis of this Complaint, including, without limitation, Coronado and Red Rock's actual and other damages as alleged herein.

vi. Order Defendants to immediately prepare and provide to Coronado, at Defendants' sole and exclusive expense, a report and accounting of all uses, distributions, and revenue realized, or that Defendants expect to realize, related to or derived from the Disputed Products.

vii. Award of treble damages to Coronado and Red Rock, respectively, pursuant to 18 U.S.C. § 1864 due to Defendants' willful commission of a pattern of racketeering activity.

viii. Award of treble damages to Coronado pursuant to 15 U.S.C. § 1117(b) due to Defendants' willful, knowing, and intentional infringement of the URBĀNE Marks.

ix. Award all damages suffered by Coronado and Red Rock pursuant to New York statutory and common law.

x. Order Defendants to pay Coronado and Red Rock the costs of this action and Coronado and Red Rock's reasonable attorneys' fees and expenses pursuant to 18 U.S.C. § 1864, 15 U.S.C. § 1117(a), and any other applicable statutes or authority.

1        xi.      Award Coronado and Red Rock such further relief as the Court deems just, proper,

2                 and equitable.

3                                    **JURY DEMAND**

4        Plaintiffs Coronado Distributing LLC and Red Rock Sourcing LLC, respectively, hereby

5   demand a trial by jury on all issues so triable, pursuant to Federal Rule of Civil Procedure 38.

6

7

8   Dated: February 5, 2021                          Respectfully submitted,

9                                                    **NIXON PEABODY LLP**

10

11                                                   By____*/s/ Daniel A. Schnapp*____

12                                                   Daniel A. Schnapp
                                                     dschnapp@nixonpeabody.com
13                                                   NIXON PEABODY LLP
                                                     55 West 46th Street
14                                                   New York, NY 10036-4120
                                                     Tel: (212) 940-3000
15                                                   Fax: (212) 940-3111

16
                                                     On Lu (*pro hac vice* forthcoming)
17                                                   onlu@nixonpeabody.com
                                                     Andrew H. Winetroub (*pro hac vice* forthcoming)
18                                                   awinetroub@nixonpeabody.com
                                                     NIXON PEABODY LLP
19                                                   One Embarcadero Center
                                                     San Francisco, California 94111-3600
20                                                   Tel: (415) 984-8200
                                                     Fax: (415) 984-8300
21

22                                                   *Attorneys for Plaintiffs Red Rock Sourcing LLC and*
                                                     *Coronado Distributing LLC*
23

24

25

26

27

28