Daniel A. Schnapp
dschnapp@nixonpeabody.com
NIXON PEABODY LLP
55 West 46th Street
New York, NY 10036-4120
Tel: (212) 940-3000
Fax: (212) 940-3111

On Lu (admitted *pro hac vice*)
onlu@nixonpeabody.com
Andrew H. Winetroub (admitted *pro hac vice*)
awinetroub@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center
San Francisco, California 94111-3600
Tel: (415) 984-8200
Fax: (415) 984-8300

*Attorneys for Plaintiffs Red Rock Sourcing LLC and Coronado Distributing LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RED ROCK SOURCING LLC, a Nevada limited liability company; and CORONADO DISTRIBUTING LLC, a Colorado limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>JGX, LLC, a New York limited liability company; and LIBERTY INTERNATIONAL DISTRIBUTORS, LLC, a New York limited liability company,<br><br>Defendants. | Case No.: 1:21-cv-01054-JPC<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT LIBERTY INTERNATIONAL DISTRIBUTORS, LLC**<br><br>Date:      July 13, 2021<br>Time:     11:00 a.m.<br>Judge:    Hon. John P. Cronan<br>Courtroom: 12D |

Plaintiffs Red Rock Sourcing LLC ("Red Rock") and Coronado Distributing LLC ("Coronado," and, together with Red Rock, the "Plaintiffs") hereby submit this Memorandum of Law in support of their Motion for Default Judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, with respect to Plaintiffs' claims, as asserted in the Complaint [Dkt. 1], against Defendant Liberty International Distributors, LLC ("Liberty") for its failure to appear, answer, plead, or otherwise move with respect to the Complaint, despite due service, within the statutory time period.

### I.   Preliminary Statement

This action arises out of Liberty's scheme, in concert with Defendant JGX, LLC ("JGX," and, together with Liberty, the "Defendants"), to, among other things, produce, import, and distribute hundreds of thousands of bottles of counterfeit hand sanitizer, at the height of the Covid-19 pandemic.  As a direct result of Defendants' fraudulent, infringing, and unfair conduct, Plaintiffs' have suffered substantial and lasting harm, both economic and reputational, including without limitation the destruction of Coronado's URBĀNE Brand[1] and significant lost and unrealized business opportunities.

Plaintiffs commenced this action by filing a Complaint with this Court on February 5, 2021 (the "Complaint").  Complaint [Dkt. 1].  After filing the Complaint, Plaintiffs successfully served Liberty on February 8, 2021.  Dkt. 11.  However, to date, Liberty has failed to appear, answer, plead, or otherwise move with respect to the Complaint.  As a result, Plaintiffs have obtained a Certificate of Default from the Clerk of the Court with respect to Liberty.  Dkt. 20.

---

[1] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the Complaint [Dkt. 1].

Plaintiffs now move for entry of default judgment against Liberty as to its liability for each and every claim Plaintiffs have asserted against it in the Complaint.[2]

## II.  Argument

### a.  Default Judgment Is Appropriate as to Liberty

In determining whether to enter a default judgment, courts have considered factors including "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, 2007 U.S. Dist. LEXIS 93420, at *2 (S.D.N.Y. Dec. 19, 2007) (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02 Civ. 9044 (LTS)(GWG), 2003 U.S. Dist. LEXIS 6881 at *2 (S.D.N.Y. Apr. 25, 2003)).

Here, given Liberty's failure to appear or otherwise respond to this action, each of these factors favors Plaintiffs.  First, Liberty's failure to appear and respond to the Complaint constitutes willful default.  *See Indymac Bank, F.S.B.*, 2007 U.S. Dist. LEXIS 93420, at *2 (holding "non-appearance in the action and . . . failure to respond to the Complaint and the instant motion practice indicate willful conduct").  Second, Liberty—by virtue of its failure to appear—has not presented any meritorious defenses to this Court, and its "default is deemed to constitute a concession of all well pleaded allegations of liability[.]" *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993).  Finally, Plaintiffs will be highly prejudiced without entry of a default judgment, as "there are no additional steps available to secure relief in

---

[2] As discussed *supra*, Plaintiffs' request herein is for the Court to enter judgment solely as to liability while expressly reserving an inquest into the amount of damages to which Plaintiffs are entitled until a subsequent stage of the litigation.

this Court" as to Liberty. *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, 2008 U.S. Dist. LEXIS 107062, at *5 (S.D.N.Y. Oct. 24, 2008). For these reasons and those further outlined below, Plaintiffs are entitled to an entry of default judgment against Liberty as to its liability.

### b. Plaintiffs Have Satisfied the Prerequisites for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment. *See, e.g., Columbia Pictures Indus. v. Cap King*, No. 08-CV-4461 (NGG), 2010 WL 1221457, at *1 (E.D.N.Y. Mar. 29, 2010).

First, under Fed. R. Civ. P. 55(a), the clerk must enter a notation of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Under S.D.N.Y. Local Rule 55.1, "a party applying for a certificate of default by the clerk pursuant to Federal Rule of Civil Procedure 55(a) shall submit an affidavit showing (1) that the party against whom a notation of default is sought is not an infant, in the military, or an incompetent person; (2) that the party has failed to plead or otherwise defend the action; and (3) that the pleading to which no response has been made was properly served." *Id.* Plaintiffs submitted such a declaration, Dkt. 16, and upon the submissions by Plaintiffs, the Deputy Clerk of the United States District Court for the Southern District of New York entered a Clerk's Certificate of Default against Defendant Liberty on March 5, 2021. Dkt. 20.

Upon obtaining a clerk's certificate of default, "a plaintiff must next seek a judgment by default under Rule 55(b)." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). In assessing whether to enter default judgment, "a court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citation omitted); *SEC v. Cole*, 661 Fed. Appx. 52, 53-54 (2d Cir. 2016) (a default "require[s] the court to accept as true the Complaint's factual allegations") (citing *Finkel*).

-4-
MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT
AGAINST LIBERTY INTERNATIONAL DISTRIBUTORS, LLC

However, a court "is also required to determine whether the . . . allegations establish [defendant's] liability as a matter of law." *Finkel*, 577 F.3d at 84 (citation omitted). As set forth below, the allegations establish Liberty's liability.

### c. Default Judgment Can Be Entered as to Liberty's Liability at this Time

"In a case such as this, where plaintiff seeks joint and several liability against several defendants, the court may enter a default judgment against any defendants who default by failing to appear." *Montcalm Pub. Corp v. Ryan*, 807 F. Supp. 975, 978 (S.D.N.Y. 1992) (citing Fed. R. Civ. Pro. 54(b), 55(b)). Further, "in such a case where some but not all defendants have defaulted 'the *courts have consistently held that it is appropriate to enter judgment solely as to liability* and not as to the amount of damages to be assessed against the defaulting party, since a separate determination of damages would pose the prospect of inconsistent judgments.'" *Id*. (quoting *Friedman v. Lawrence*, No. 90 Civ. 5584, 1991 WL 206308 (S.D.N.Y. Oct. 2, 1991), emphasis added).

Thus, as the court affirmed in *Montcalm*, a default judgment as to liability may be entered against defaulting defendants which shall "preclude them from participating in the merits aspect of the trial in this action." *Id*.

Consistent with this authority, Plaintiffs' request for entry of default judgment against Liberty as to its liability is proper and in accordance with applicable law. Moreover, the court in *Knowles-Carter*, to which this Court directed Plaintiffs in its May 24, 2021 Order [Dkt. 38], placed "significant[]" weight on the fact that "the requested default judgment" sought "an injunction that would apply to and prejudice the actively litigating Defendants" and "damages in the way of attorney's fees . . . ." *Knowles-Carter v. Feyonce, Inc*., No. 16-cv-2532 (AJN), 2017 WL 11567528, at *6 (S.D.N.Y. Sept. 23, 2017). Here, Plaintiffs are proceeding in accordance with *Montcalm* and respectfully requesting that the Court "enter judgment solely as to liability and not as to the amount

of damages to be assessed against the defaulting party." *Montcalm*, 807 F. Supp. at 978. Therefore, the circumstances present in *Knowles-Carter* are absent here, and the default judgment as to liability is just and proper.

Further, JGX will not be prejudiced by entry of the requested default judgment, which specifically calls for the inquest into damages to be consolidated with the damages phase of the trial against JGX. *See* Proposed Default Judgment submitted concurrently herewith. In addition, JGX has asserted three cross-claims against Liberty, which allege, *inter alia*, that Liberty is directly and proximately responsible for JGX's liability in this case. *See* Dkt. 22 at 21, ¶ 10. Thus, any resulting default judgment as to Liberty's liability will not prejudice JGX, as JGX will retain the right to seek to establish its cross-claims against Liberty and, thereby, to obtain the remedy it seeks: "full or partial indemnification and/or equitable contribution in connection with any liability that may be adjudged against JGX." *See* Dkt. 22 at 22, ¶ 21.

Accordingly, not only are the elements met for entry of a default judgment against Liberty on the issue of liability, the relief requested will *not* prejudice the actively litigating defendant, JGX.

### d. The Allegations in the Complaint Establish Liberty's Liability for Each Claim Asserted by Plaintiffs.

#### i. Racketeer Influenced and Corrupt Organizations Act Liability

To state a legally-sufficient Racketeer Influenced and Corrupt Organizations Act ("RICO") claim, a plaintiff must establish that: (i) the defendant; (ii) through the commission of two or more predicate acts; (iii) constituting a pattern; (iv) of racketeering activity; (v) directly or indirectly participates; (vi) in an enterprise; (vii) the activities of which affect interstate commerce. *See Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1993), citing 18 U.S.C. § 1962(a)(c). Given the

benefit of all legitimate inferences that can be drawn from the facts alleged in the Complaint, Plaintiffs meet these requirements and have shown that Liberty violated the civil RICO statute.

### 1. The Enterprise

First, the RICO statute defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *See* 18 U.S.C. § 1961(4). In the present case, the allegations against Liberty and JGX clearly outline the relatedness of the Defendants' respective activities with respect to the counterfeit hand sanitizer at issue as well as the relatedness of Liberty to JGX in their fraudulent scheme against Plaintiffs and their valuable intellectual property. *See* Complaint ¶¶ 32-72.

### 2. Racketeering Activities

Second, Pursuant to U.S.C. § 1961(1)(B), "racketeering activity" is comprised of specific enumerated crimes, including mail fraud, wire fraud, and trafficking in counterfeit goods. *See* 18 U.S.C. § 1961(1)(B). Under the statute, a complaint must plead at least two predicate acts of "racketeering activity." *See Allstate Ins. Co. v Valley Physical Medicine & Rehabilitation, P.C.*, 2009 WL 3245388 at *5-7 (E.D.N.Y. 2009); *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 227 (E.D.N.Y. 2010) (mail fraud requires that the pleading allege that defendants engaged in: (i) a scheme to defraud; (ii) to get money or property; (iii) furthered by the use of the mails and/or wires). The predicate acts alleged in the Complaint consist of numerous violations of the federal mail and wire fraud statutes, 18 U.S.C. § 1341, based upon the use of the mails and/or wires to coordinate and execute their fraudulent scheme against Plaintiffs and their valuable intellectual property. *See* Complaint ¶¶ 32-72. Further, the Complaint specifically alleges that Liberty and JGX worked together to traffic counterfeit hand sanitizer under the URBĀNE Brand, which ultimately led to, among other things, the FDA Order. *See* 18 U.S.C. § 1961(1)(B); 18

U.S.C. § 2320.  These allegations, which must be accepted as true for purposes of this motion for default judgment, amply establish Liberty's racketeering activities.

### 3. The Participation

Third, in the RICO context, "participation" means "participation in the operation or management of the enterprise." *De Falco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001). Under the "operation or management" test, to participate, directly or indirectly, in the conduct of an enterprise's affairs, "one must have some part in directing those affairs." *Id*.  RICO liability is not limited to those with primary responsibility, nor to those with a formal position in the enterprise, but only requires some part in directing the enterprise's affairs. *Id*.  In this context, Liberty clearly "participated" in the alleged enterprise in a manner sufficient to support RICO liability.  As the Complaint alleges, Liberty and JGX acted in concert to implement a scheme through which Plaintiffs' URBĀNE Brand was fraudulently used in the production, importation, and distribution of counterfeit hand sanitizer, with Liberty playing a key part in directing, at a minimum, the manufacturing, production, and importation of the hand sanitizer from Mexico. *See* Complaint ¶¶ 32-72.  Such "participation" allegations are sufficient to plead civil RICO claims against Liberty. *See Government Employees Ins. Co. v. Damien*, 2011 WL 5976071 at *5-6 (E.D.N.Y. 2011); *Allstate Ins. Co. v. Ahmed Halima*, 2009 WL 750199 at *5 (E.D.N.Y. 2009); *State Farm Mut. Automobile Ins. Co. v. CPT Med. Servs., P.C.*, 2008 WL 4146190 at *11 (E.D.N.Y. 2009).

### 4. The Pattern

Fourth, RICO provides that a "pattern of racketeering activity" must consist of "at least two acts of racketeering activity" undertaken within 10 years. *See* 18 U.S.C. § 1961(5).  To establish a "pattern" sufficient to satisfy the statute, a complaint must allege facts tending to show that "the predicate acts of racketeering activity by a defendant are related, and that they amount to or pose a threat of continued criminal activity." *See Valley*, 2009 WL 3245388 at *3 (quotation

omitted). Pursuant to these standards, by alleging multiple rounds of manufacturing, importing, and distributing counterfeit products as well as the unknown location of a substantial quantity of existing counterfeit products, Plaintiffs have sufficiently pleaded a "pattern of racketeering activity" sufficient to satisfy the RICO statute. *See* Complaint ¶¶ 8-52.

Accordingly, Plaintiffs' RICO claim against Liberty is legally sufficient and a default judgment should be entered against Liberty with respect to this claim.

### ii. Lanham Act Liability

Plaintiffs have asserted four causes of action against Liberty pursuant to the Lanham Act: (i) Trademark Infringement; (ii) Contributory Infringement; (iii) False Designation of Origin and Unfair Competition; and (iv) False Advertising. Plaintiffs have pleaded sufficient allegations, when taken as true as they must be for purposes of this Motion, to establish Liberty's liability for each of the asserted causes of action under the Lanham Act.

As for trademark infringement, Plaintiffs have asserted that the URBĀNE Marks are valid, protectable marks, that Coronado owns the URBĀNE Marks, and that Liberty's use of the URBĀNE Marks is likely to cause consumer confusion. *See* Complaint ¶¶ 12-89; *see also Innovation Ventures, LLC v. Ultimate One Distributing Corp.*, 176 F.Supp.3d 137, 153 (E.D.N.Y. 2016) (setting forth trademark infringement elements). Additionally, in the counterfeit context, as is the case with Liberty's unauthorized use of the URBĀNE Marks, "the court need not undertake an exhaustive analysis of the *Polaroid* factors because 'counterfeit marks are inherently confusing.'" *Id*. at 154 (quoting *Fendi Adele S.L.R. v. Burlington Coat Factory Warehouse Corp.*, 689 F.Supp.2d 585, 596-97 (S.D.N.Y. 2010)). Therefore, Coronado's trademark infringement claim under the Lanham Act is legally sufficient and a default judgment should be entered against Liberty with respect thereto.

As for contributory trademark infringement, Plaintiffs' allegations establish direct infringement and, moreover, that Liberty induced third parties to infringe the URBĀNE Marks and that it supplied goods to JGX and/or Rigz while knowing, or having reason to know, that they were infringing the marks at issue.  *See* Complaint ¶¶ 12-89; *see generally Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854 (1982).  As a result, Coronado's contributory trademark infringement claim under the Lanham Act is legally sufficient and a default judgment should be entered against Liberty with respect thereto.

As for false designation of origin and unfair competition, Plaintiffs have asserted well pleaded allegations that Liberty used the URBĀNE Brand as a designation in commerce in connection with hand sanitizer where the "designation [was] likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of [Liberty] with [Plaintiffs], or as to the origin, sponsorship, or approval of [Liberty's] goods, services, or commercial activities by another person [e.g., Plaintiffs]." *See* Complaint ¶¶ 12-89; 15 U.S.C. § 1125(a)(1)(A).  Further, Plaintiffs have pleaded facts that establish they were harmed by Liberty's actions in this respect.  *Id*. Therefore, Plaintiffs' claim for false designation of origin and unfair competition under the Lanham Act is legally sufficient and a default judgment should be entered against Liberty with respect thereto.

As for false advertising under the Lanham Act, Plaintiffs set forth in the Complaint well pleaded allegations that Liberty made false or misleading statements as to the hand sanitizer products at issue that caused actual deception or, at a minimum, a tendency to deceive a substantial portion of the intended audience.  *See* Complaint ¶¶ 12-89; *see also Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016) (setting forth elements of false advertising claim under the Lanham Act).  In addition, Liberty's deception as to the authenticity of its hand sanitizer product was material in that it likely impacted purchasing

decisions. *Id*. Finally, Plaintiffs have sufficiently alleged that the hand sanitizer products moved in interstate commerce and, ultimately, led to the substantial harm Plaintiffs have suffered here. *Id*. Accordingly, Plaintiffs' claim for false advertising under the Lanham Act is legally sufficient and a default judgment should be entered against Liberty with respect thereto.

### iii. New York Statutory and Common Law Liability

Plaintiffs have asserted a number of claims pursuant to New York statutory and common law in addition to the various causes of action under federal law. For the reasons set forth herein, Plaintiffs have set forth well pleaded allegations as to Liberty's liability for each of the following claims: (i) Deceptive Business Practices; (ii) Trademark Infringement under New York Common Law; (iii) Tortious Interference with Prospective Economic Advantage; (iv) Unfair Competition under New York Common Law; (v) Unjust Enrichment under New York Common Law; and (vi) Dilution by Tarnishment.

Plaintiffs have pleaded facts sufficient to establish the three elements of its deceptive business practices claim under the New York General Business Law: (i) that Liberty's acts and practices with regard to the counterfeit hand sanitizer at issue were consumer-facing; (ii) that Liberty's actions were misleading in a material way, as evidenced by the fact that consumers ultimately purchased the counterfeit hand sanitizer; and (iii) Plaintiffs were seriously harmed as a result of Liberty's actions. *See* Complaint ¶¶ 12-89; *see generally McCrobie v. Palisades Acquisition XVI, LLC, et al.*, 359 F.Supp.3d 239, 254 (N.D.N.Y. 2019) (quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000). Therefore, Plaintiffs' claim is legally sufficient and a default judgment should be entered against Liberty.

As for the claim of trademark infringement under New York common law, Plaintiffs have sufficiently pleaded that Coronado has a valid and protectable mark under the URBĀNE Brand and there is a likelihood of confusion arising from Liberty's use of a counterfeit version of the same.

*See* Complaint ¶¶ 12-89.  Accordingly, Coronado is entitled to a default judgment as to its claim for common law trademark infringement.  *See*, *e.g.*, *Horn's, Inc. v. Sanofi Beaute, Inc*., 963 F. Supp. 318, 328 (S.D.N.Y. 1997).

Regarding Red Rock's claim for tortious interference with prospective economic advantage, it has sufficiently pleaded facts that establish Liberty's liability, including that Red Rock had a business relationship with, among others, Rite Aid that Liberty interfered with, and ultimately injured irreparably, as a result of its unfair and improper activities, including without limitation trademark infringement, false designation of origin, and unfair competition.  *See* Complaint ¶¶ 12-89; *see also Kirch v. Liberty Media Group*, 449 F.3d 388, 400 (2d Cir. 2006) (quoting *Carvel Corp. v. Noonan*, 350 F.3d 6, 1 (2d Cir. 2003)).  Therefore, Red Rock's claim is legally sufficient and a default judgment should be entered against Liberty.

Further, in light of the allegations setting forth Liberty's unfair acts with regard to the counterfeit and infringing hand sanitizer at issue, as well as the confusion with Plaintiffs' activities that Liberty caused and/or was likely to cause, Plaintiffs have sufficiently pleaded a claim for unfair competition under New York common law.  *See* Complaint ¶¶ 12-89; *see also Phillip Morris USA Inc. v. Felizardo*, No. 03-cv-5891-HB, 2004 WL 1375277, at *6 (S.D.N.Y. June 18, 2004) (setting forth requirements to prevail on a common law unfair competition claim in the Second Circuit).  Therefore, Coronado's claim is legally sufficient and a default judgment should be entered against Liberty.

As for Plaintiffs' unjust enrichment claim, Plaintiffs have set forth well pleaded allegations that Liberty was enriched at Plaintiffs' expense and that it would be against equity and good conscience to permit Liberty to retain the amounts Plaintiffs are seeking to recover.  *See* Complaint ¶¶ 12-89; *see also Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011).  Therefore,

Plaintiffs have adequately pleaded a claim for unjust enrichment and a default judgment should be entered against Liberty.

Finally, as for Plaintiffs' dilution by tarnishment claim under New York law, Plaintiffs have set forth well pleaded allegations that the URBĀNE Brand has a distinctive quality or secondary meaning that is capable of dilution and a likelihood of dilution as a result of authentic goods under the URBĀNE Brand being linked to the inferior quality of products produced and distributed by Liberty.  *See* Complaint ¶¶ 12-89; *see also Deere & Co. v. MTD Prods., Inc*., 41 F.3d 39, 42 (2d Cir. 1994).  Therefore, Plaintiffs have adequately pleaded a claim for dilution by tarnishment and a default judgment should be entered against Liberty.

### III.   Damages

As stated herein, Plaintiffs have set forth in the Complaint well plead and legally sufficient claims for which default judgment should be entered against Liberty.  However, JGX has also asserted claims against Liberty for, *inter alia*, equitable indemnity and equitable contribution.  Therefore, for the reasons set forth herein, Plaintiffs respectfully submit that the Court may enter a default judgment on the issue of liability against Liberty at this time with an inquest into damages consolidated with the damages phase of the trial against the non-defaulting defendant, JGX.  *See*, *e.g.*, *Montcalm*, 807 F. Supp. at 978.

### IV.   Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for a default judgment against Liberty with respect to its liability for each and every claim asserted in Plaintiffs' Complaint such that Liberty may not participate in the merits aspect of the trial, as its default judgment stands as an admission of liability.  Plaintiffs further request that the Court order that an inquest into the amount of damages to which Plaintiffs are entitled be consolidated with the damages phase of the trial against JGX.

Dated: June 11, 2021						Respectfully submitted,

**NIXON PEABODY LLP**


By	/s/ Daniel A. Schnapp

Daniel A. Schnapp
dschnapp@nixonpeabody.com
NIXON PEABODY LLP
55 West 46th Street
New York, NY 10036-4120
Tel: (212) 940-3000
Fax: (212) 940-3111

On Lu (admitted *pro hac vice*)
onlu@nixonpeabody.com
Andrew H. Winetroub (admitted *pro hac vice*)
awinetroub@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center
San Francisco, California 94111-3600
Tel: (415) 984-8200
Fax: (415) 984-8300

*Attorneys for Plaintiffs Red Rock Sourcing LLC and Coronado Distributing LLC*