UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
RED ROCK SOURCING LLC and CORONADO                                :
DISTRIBUTING LLC,                                                 :
                                                                  :
                          Plaintiff,                              :    21 Civ. 1054 (JPC)
                                                                  :
            -v-                                                   :    OPINION AND
                                                                  :    ORDER
                                                                  :
JGX, LLC, et al.,                                                 :
                                                                  :
                          Defendants.                             :
                                                                  :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Plaintiffs Red Rock Sourcing LLC ("Red Rock") and Coronado Distributing LLC ("Coronado") have sued nine defendants for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.; trademark infringement, unfair competition, and false advertising under the Lanham Act, 15 U.S.C. § 1051 et seq.; and similar claims under New York law, all arising from an alleged counterfeit hand sanitizer scheme. Dkt. 122 ("First Am. Compl."). After Plaintiffs were allowed to move for leave to file a Second Amended Complaint that would, among other things, add claims for trademark infringement under federal and state law against Pilot Travel Centers, LLC ("Pilot") and Love's Travel Stops & Country Stores, Inc. ("Love's"; together with Pilot, the "Retail Defendants"), Dkts. 174, 179, and after that motion was filed, Dkts. 184-86, nonparty Rigz LLC ("Rigz") moved to intervene both as of right and pursuant to the Court's discretion, for the purpose of opposing Plaintiffs' motion to amend, Dkts. 205-07. Rigz intends to argue that leave to amend would be both untimely and futile because Plaintiffs' proposed claims against the Retail Defendants are foreclosed by Rigz's

settlement agreement with Plaintiffs. Dkt. 206 ("Motion") at 1. As explained below, the Court finds that permissive intervention under Federal Rule of Civil Procedure 24(b) is appropriate. Accordingly, Rigz's motion to intervene is granted.

## I. Background

### A. Facts[1]

In early 2020, Plaintiffs began developing a hand sanitizer under the URBĀNE Brand, a registered trademark owned by Coronado. Proposed Second Am. Compl. ¶¶ 28-31, 38, 40. Plaintiffs allege that URBĀNE Brand hand sanitizer is unique because "(1) it utilize[s] a high quality formula that was equally effective without the associated foul-smell of typical sanitizer; (2) it was 'Made in America' which particularly appealed to U.S. consumers; and (3) it came in a credit card-sized sprayer that was prized by consumers and retailers alike." *Id.* ¶ 46. Because the URBĀNE Brand was already established, Plaintiffs were able to bring their hand sanitizer product quickly to market and capitalized on the onset of the COVID-19 pandemic, *id.* ¶¶ 44, 47, making their initial sales of URBĀNE Brand hand sanitizer very successful, *id.* ¶¶ 54-55, 58-59.

After developing their URBĀNE Brand hand sanitizer product, Plaintiffs began selling it to Rigz. *Id.* ¶ 53. Rigz was Red Rock's longtime distribution partner, and the two companies "regularly communicated regarding their respective distribution businesses and opportunities they observed in the market." *Id.* ¶¶ 52-53. Rigz "successfully placed URBĀNE hand sanitizer into a number of national businesses, including those of the Retail Defendants with over 2,000 combined stores located across the country." *Id.* ¶ 55. After initial sales of URBĀNE Brand hand sanitizer were successful, however, Rigz secretly began working with various other named Defendants (the

---

[1] The following facts are drawn from Plaintiffs' proposed Second Amended Complaint, as revised on January 12, 2023, Dkt. 263 ("Proposed Second Am. Compl."), and are accepted as true only for the purpose of deciding this Opinion and Order.

"Counterfeiting Defendants") to produce counterfeit URBĀNE Brand hand sanitizer (the "Counterfeit Product") to meet the growing demand. *Id.* ¶¶ 61-64.

The Counterfeit Product came in near-identical packaging, *id.* at 16, but unlike true URBĀNE Brand hand sanitizer, the Counterfeit Product was manufactured in Mexico and contained methanol—"a substance that can be toxic when absorbed through the skin and can be life-threatening when ingested," *id.* ¶ 2. Rigz and the Counterfeiting Defendants produced "hundreds of thousands of bottles" of the Counterfeit Product, *id.* ¶ 196; *see also id.* ¶ 183, and sold it to stores as true URBĀNE Brand hand sanitizer, *id.* ¶¶ 199-205, 210-11. Indeed, Rigz ordered approximately one million bottles of the Counterfeit Product of which at least 216,000 were received. *Id.* ¶¶ 196, 238. Rigz shipped approximately 85,882 units of the Counterfeit Product to Pilot which ultimately sold over 50,000 units, and 115,295 units of the Counterfeit Product to Love's which ultimately sold over 92,000 units. *Id.* ¶¶ 199-200, 203-04. When the Counterfeit Product was recalled, Rigz hid its involvement in the scheme from its customers. *Id.* ¶ 237.

**B.    Procedural History**

Rigz contends, and Plaintiffs do not dispute, that on August 5, 2020, prior to initiating this action, Rigz and Plaintiffs entered into a settlement agreement regarding Rigz's involvement in the alleged counterfeiting scheme. Motion at 1; *see also* Dkt. 189 (the "Settlement Agreement"). Pursuant to that agreement, Plaintiffs "release[d] and discharge[d] Rigz et al. . . . and their past or present . . . customers . . . from any and all actions, claims, demands . . . and causes of action from the beginning of time to the date of this Settlement Agreement . . . arising under trademark infringement, counterfeiting, or theft of intellectual property." Motion at 1-2 (quoting Settlement Agreement at 3).

Plaintiffs initiated this action on February 5, 2021 against Defendants JGX, LLC ("JGX") and Liberty International Distributors, LLC ("Liberty"). Dkt. 1. JGX answered the Complaint and asserted cross-claims against Liberty on March 24, 2021, Dkt. 22, and the Court entered a Case Management Plan on April 27, 2021, commencing discovery, Dkt. 28. Rigz represents that despite not being a named party to the litigation, Plaintiffs "have increasingly sought to escalate Rigz's involvement in this lawsuit" during initial discovery. Motion at 2. Plaintiffs took multiple depositions of Rigz's representatives and served Rigz with third-party document subpoenas. *Id*. Following this discovery, Rigz and Plaintiffs reached an amendment to the Settlement Agreement whereby Rigz agreed to pay Plaintiffs additional consideration to resolve its and its customers' conduct. *Id.* at 2-3; *see* Dkt. 190 (the "Amendment").[2]

On December 23, 2021, Plaintiffs sought leave to amend the Complaint to add additional Defendants as well as a new negligence claim against all Defendants. Dkts. 102, 102-4. Plaintiffs did not seek to add Rigz or the Retail Defendants in their first motion to amend. At a conference held on January 27, 2022, the Court granted Plaintiffs leave to amend, finding Plaintiffs demonstrated good cause based on additional information learned during discovery. Dkt. 118 at 16-17. In granting Plaintiffs' motion, however, the Court noted that the opposition raised "a number of potentially meritorious arguments regarding the allegations in the proposed amended complaint" and therefore gave Plaintiffs the opportunity to file a revised version of the their proposed pleading. *Id.* at 21. Plaintiffs accepted that additional time, *id.* at 21-22, and filed the First Amended Complaint on February 10, 2022.

---

[2] The Court previously granted Rigz's request to maintain the Settlement Agreement and the Amendment under seal. *See* Dkt. 191. Accordingly, the Court only discusses the portions quoted or summarized in the parties' briefs.

On April 14, 2022, following pre-motion letters from the Counterfeiting Defendants seeking leave to move to dismiss the First Amended Complaint, Dkts. 141, 147, Plaintiffs notified the Court of their intent to seek leave to amend yet again, Dkt. 166, and filed their pre-motion letter on April 27, 2022, Dkt. 174.  As relevant here, Plaintiffs sought leave to file a Second Amended Complaint that would add claims against the Retail Defendants.  Proposed Second Am. Compl. ¶¶ 25-26, 415-27.  On May 3, 2022, counsel for Rigz appeared and filed a pre-motion letter opposing Plaintiffs' request.  Dkt. 178.  In particular, Rigz argued that the Settlement Agreement foreclosed any claims against the Retail Defendants and that Plaintiffs failed to demonstrate good cause for their failure to add the Retail Defendants until this stage in the litigation.  *Id.*  The Court granted Plaintiffs leave to move to amend, and specifically directed Plaintiffs to "address the futility arguments raised by . . . non-party Rigz in [its letter], including with respect to the settlement agreement supposedly entered into between Plaintiffs and Rigz . . . and whether Plaintiffs can establish 'good cause' for seeking leave to file a Second Amended Complaint."  Dkt. 179 at 1.

While briefing on Plaintiffs' motion to amend was in progress, Rigz formally sought leave to move to intervene for the limited purpose of opposing the motion . Dkt. 187.  The Court granted Rigz leave to file its intervention motion.  Dkt. 202.  Rigz filed its opening brief on June 13, 2022, Plaintiffs filed their opposition brief on June 21, 2022, Dkt. 213 ("Opposition"), and Rigz filed a reply brief on June 27, 2022, Dkt. 215, and a sur-reply on January 6, 2023, Dkt. 267.  In addition, the JGX Defendants and the Worldwide Defendants[3] each filed briefs in support of Rigz's motion to intervene.  Dkts. 212, 214.

---

[3] The JGX Defendants consist of JGX, Isaac Import, Inc., and Jack Grazi.  The Worldwide Defendants consist of Triple Five Worldwide, LLC, Isaac Saba, David Ghermezian, Yonah Ghermezian, and Eliezer Berkowitz.

## II.  Legal Standard

Intervention is "a procedural device that attempts to accommodate two competing policies: efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).  Federal Rule of Civil Procedure 24 "strikes this balance by providing potential intervenors with two ways to intervene: intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b)." *Cont'l Indem. Co. v. Bulson Mmgt., LLC*, No. 20 Civ. 3479 (JMF), 2020 WL 6586156, at *2 (S.D.N.Y. Nov. 10, 2020).

Rule 24(a)(2) provides that a court must grant intervention to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Thus, to intervene as of right pursuant to Rule 24(a)(2), "a movant must '(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.'" *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)).  "Failure to meet any one of these requirements suffices for a denial of the motion." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197-98 (2d Cir. 2000).

Rule 24(b) "provides that, on timely motion, intervention may be permitted to anyone who 'has a claim or defense that shares with the main action a common question of law or fact.'" *Eddystone Rail Co. v. Jamex Transfer Servs., LLC*, 289 F. Supp. 3d 582, 595 (S.D.N.Y. 2018)

(quoting Fed. R. Civ. P. 24(b)).  "In exercising its discretion, the court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).  Thus, the Court "analyze[s] three criteria in adjudicating a motion for permissive intervention: (1) the timeliness of the motion; (2) a common question of law or fact; and (3) undue delay or prejudice." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 315 F.R.D. 169, 172 (S.D.N.Y. 2016); *cf. United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994) (noting that undue delay or prejudice is "[t]he principal guide in deciding whether to grant permissive intervention").

### III.  Discussion

Because the Court finds that permissive intervention under Rule 24(b) is warranted, the Court does not reach whether Rigz satisfies the factors to require intervention as of right under Rule 24(a)(2).  Each of the relevant considerations for permissive intervention weighs in favor of granting Rigz's motion.

First, the motion is timely.  Plaintiffs sought leave to move to add the Retail Defendants to this action on April 27, 2022, Dkt. 174, and Rigz filed a response to that request less than one week later on May 3, 2022, Dkt. 178.  Then, when the Court granted Plaintiffs leave to move to amend on May 6, 2022, Dkt. 179, Rigz sought leave to intervene shortly thereafter on May 27, 2022, Dkt. 187.  Until Plaintiffs obtained leave to move to add the Retail Defendants, Rigz had no need to intervene.  Thus, Rigz acted promptly starting almost immediately from when its interest in the litigation—*i.e.*, protecting the Settlement Agreement—was implicated.  *See Med. Diagnostic Imaging, PLLC v. CareCor Nat'l, LLC*, 542 F. Supp. 2d 296, 303 (S.DN.Y. 2008) ("When a would-be intervenor knew or should have known that it has an interest in the litigation is an important factor in determining whether a motion to intervene is timely.").

As to the existence of a common question of law or fact, courts have noted that "[t]he words claim or defense in permissive intervention are not to be read in a technical sense' but rather should be read to require '*some interest*' in the subject matter of the litigation." *Cont'l Indem. Co.*, 2020 WL 6586156, at *3 (emphasis added) (quoting *Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 488 (S.D.N.Y. 2011)); *see* Fed. R. Civ. P. 26(b)(1) ("[T]he court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."). The Court also considers the extent to which "parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal issues presented." *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191-92 (2d Cir. 1978) (internal quotation marks omitted); *see also Cross Sound Cable Co. v. Long Island Lighting Co.*, No. 21 Civ. 2771 (KAM) (ARL), 2022 WL 247996, at *4 (E.D.N.Y. Jan. 27, 2022).

Rigz's interest in protecting the Settlement Agreement constitutes an interest for the purposes of permissive intervention. *See, e.g.*, *Olympus Corp. v. United States*, 627 F. Supp. 911, 916 (S.D.N.Y. 1985) ("[T]he enormity of [the proposed intervenor's] economic stake in the [litigation], though too contingent to justify intervention as of right, weighs heavily in favor of permissive intervention." (footnote omitted)); *cf. Dorsett v. Cnty. of Nassau*, 283 F.R.D. 85, 90 (E.D.N.Y. 2012) ("[P]ermissive intervention is the more proper procedural route for intervention by a non-party in a private civil action for the purpose of enforcing or modifying a confidentiality order."). In contrast to the more stringent test for mandatory intervention, courts conduct a holistic review of the totality of circumstances when assessing permissive intervention. *See Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*, No. 19 Civ. 11285 (KMK), 2020 WL 5667181, at *6 (S.D.N.Y. Sept. 23, 2020) ("Specifically, the various components of [Rule

8

24(a)(2)] are not bright lines [in the context of Rule 24(b)], but ranges—not all interests are of equal rank, and representation by existing parties may be more or less adequate. Application of the Rule requires that its components be read not discreetly, but together. For example, a showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy or representation."). If Rigz is correct that the Settlement Agreement encompasses the claims asserted against the Retail Defendants, and that Rigz is liable to the Retail Defendants for indemnity, then the Retail Defendants, who are not signatories to the Settlement Agreement, have little incentive to defend it because they may be able to just transfer any judgment entered against them onto Rigz.

Moreover, separate and apart from the strength of Rigz's interest, Rigz will likely make a "significant[] contribut[ion] to full development of the underlying factual issues in the suit." *Brennan*, 579 F.2d at 192. According to the Proposed Second Amended Complaint, Rigz was a key player in Defendants' counterfeiting scheme. Rigz was Plaintiffs' primary point of contact, Proposed Second Am. Compl. ¶¶ 52-53, allegedly came up with the initial idea of creating the Counterfeit Product to satisfy customer demand, *id.* ¶¶ 61-62, and was the party who first reached out to the Counterfeiting Defendants to produce the Counterfeit Product, *id.* ¶¶ 62, 64. Thus, Rigz is clearly an integral piece of this puzzle and can provide clear "insight into the factual or legal questions underlying these claims." *Cont'l Indem. Co.*, 2020 WL 6586156, at *4. And Rigz has demonstrated its likely ability to contribute through its extensive and thorough participation in early discovery, despite not being a party to the action. *See* Motion at 2-3.

Finally, Rigz's intervention at this stage would not cause significant prejudice to the existing parties or any undue delay. Both groups of existing Defendants have filed briefs supporting Rigz's intervention. Dkts. 212, 214. Moreover, while this case has been pending for

almost two years, litigation is still in early stages, with discovery ongoing and Plaintiffs' motion to amend pending. *Cf. John Wiley & Sons*, 315 F.R.D. at 174 (denying permissive intervention in part because "intervention would require the reopening of discovery and further delay in this three-year-old case").

In sum, Rigz's motion is timely, Rigz's interest shares a common question of fact with the underlying action, Rigz is likely to contribute to the development of underlying factual issues, and Rigz's intervention will not cause significant prejudice to the existing parties or otherwise result in undue delay. As such, the Court finds permissive intervention to be appropriate.

## IV. Conclusion

Accordingly, for the reasons discussed above, the Court grants Rigz's motion to intervene pursuant to Rule 24(b). Rigz shall file its response to Plaintiffs' motion to amend within seven days of this Opinion and Order. In its response, the Court encourages Rigz to address the following questions:

- Whether Rigz has standing to object to the Proposed Second Amended Complaint on behalf of the Retail Defendants. *See N.Y. Wheel Owner LLC v. Mammoet Holding B.V.*, 481 F. Supp. 3d 216, 250 (S.D.N.Y. 2020);

- To the extent Rigz intends to raise arguments related to the Settlement Agreement, whether the Court can properly consider the Settlement Agreement despite it not being referenced in the Proposed Second Amended Complaint. *See Nettis v. Levitt*, 241 F.3d 186, 194 n.4 (2d Cir. 2001) ("Determinations of futility are made under the same standards that govern Rule 12(b)(6) motions to dismiss."), *overruled on other grounds by Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006); and

- Whether Plaintiffs have unduly delayed seeking leave to add claims against the Retail Defendants in light of having notice of such potential claims prior to filing the First Amended Complaint.  *See* Opposition at 6.

Plaintiffs may file a reply in response to Rigz's opposition to amendment no later than seven days following the filing of Rigz's opposition.

SO ORDERED.

Dated: February 1, 2023
       New York, New York

_____
JOHN P. CRONAN
United States District Judge