UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                :

RED ROCK SOURCING, LLC, *et al.*,       :

                          Plaintiffs,     :

                -v-                   :

JGX, LLC *et al.*,                   :

                         Defendants.   :

------------------------------------------------------------------X       21 Civ. 1054 (JPC)

JGX, LLC, *et al.*,                 :       OPINION AND ORDER

                       Third-Party Plaintiffs, :

                -v-                   :

RIGZ, LLC *et al.*,                 :

                      Third-Party Defendants. :

------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      On February 5, 2021, Plaintiffs Red Rock Sourcing LLC ("Red Rock") and Coronado Distributing LLC ("Coronado") sued various defendants for claims arising out of an alleged scheme to sell counterfeit hand sanitizer. Since then, the Court has resolved countless discovery disputes, twice permitted Plaintiffs to file an amended complaint over Defendants' objections, and resolved several motions to dismiss the sixteen-count, fifteen-defendant Second Amended Complaint. Now, almost three years after the deadline to add new parties or claims, Defendants JGX, LLC ("JGX"), Jack Grazi, Dib Jaradeh, and Nouri Jaradeh (collectively, the "JGX Defendants") filed a Third-Party Complaint, without first obtaining leave to do so, against

nonparties Rigz, LLC ("Rigz") and Anthony Carelli (together, the "Rigz Parties").  The Rigz Parties move to dismiss that complaint as deficient under Federal Rules of Civil Procedure 14 and 16.  As requested by the JGX Defendants, the Court construes the parties' filings as an opposed motion by the JGX Defendants for leave to file the Third-Party Complaint.  Moreover, to the extent that leave is not required to file the Third-Party Complaint, the Court construes the Rigz Parties' motion to dismiss as one to strike the Third-Party Complaint.[1]  For the reasons discussed herein, the Court denies leave and strikes the Third-Party Complaint in its entirety.

## I. Background[2]

### A.    Facts

The underlying dispute in this case arises out of an alleged scheme to sell counterfeit hand sanitizer during the COVID-19 pandemic.  During early 2020, Red Rock and Coronado developed a hand sanitizer under the URBĀNE Brand, a registered trademark owned by Coronado.  SAC

---

[1] The Rigz Parties moved "pursuant to Federal Rules of Civil Procedure 12, 14, and 16, dismissing the JGX Defendants' Third-Party Complaint," Dkt. 410 at 1, arguing that the JGX Defendants fail to meet the standards governing Rules 14 and 16, Dkt. 410-1.  The Rigz Parties do not make any arguments as to any of the defenses listed in Rule 12(b) that justify a motion to dismiss, and so it is not clear how the motion is properly brought under Rule 12.  Accordingly, the Court construes the parties' filings as an opposed motion to strike brought by the Rigz Parties, as well as an opposed motion for leave to file the Third-Party Complaint brought by the JGX Defendants.  *See* Fed. R. Civ. P. 14(a)(4) ("Any party may move to strike the third-party claim, to sever it, or to try it separately.");  6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1443 (3d ed. 2024) ("[W]hen the third-party claim is instituted within the fourteen-day period[,] . . . the case against permitting impleader must be made on a motion to strike the third-party claim.").

[2] This background is based on the allegations in Plaintiffs' Second Amended Complaint, Dkt. 310 ("SAC"), and the JGX Defendants' Third-Party Complaint against the Rigz Parties, Dkt. 381 at 83-93 ("TPC").  The factual allegations and procedural history of this case are recited in detail in the Court's prior opinions.  *See Red Rock Sourcing LLC v. JGX, LLC ("Red Rock I")*, No. 21 Civ. 1054 (JPC), 2023 WL 1468980 (S.D.N.Y. Feb. 2, 2023); *Red Rock Sourcing LLC v. JGX, LLC ("Red Rock II")*, No. 21 Civ. 1054 (JPC), 2023 WL 3736442 (S.D.N.Y. May 31, 2023); *Red Rock Sourcing LLC v. JGX LLC ("Red Rock III")*, No. 21 Civ. 1054 (JPC), 2024 WL 1243325 (S.D.N.Y. Mar. 22, 2024).  The Court assumes familiarity with those opinions and discusses only the background necessary to resolve the instant dispute.

¶¶ 37-40, 50-53.  Soon thereafter, Red Rock began selling large quantities of the hand sanitizer to Rigz, an Arizona-based distributor with whom Red Rock had developed a business relationship before the pandemic.  *Id.* ¶¶ 72-77.  Rigz, in turn, "successfully placed URBĀNE hand sanitizer in several national businesses . . . which had over 2,000 combined stores located across the country." *Id.* ¶ 78.  After such early and substantial success, Rigz—through its principals Carelli and Jarrett Portz—began working with other vendors to produce counterfeit URBĀNE hand sanitizer (the "Counterfeit Product").  *Id.*  ¶¶ 83-89.

The JGX Defendants were some of the first to join Rigz in its counterfeiting scheme.  *Id.* ¶¶ 93-96.  After some initial discussion in April 2020, Carelli sent Grazi, the principal of JGX, an email with an image of the URBĀNE label.  *Id.* ¶¶ 90-91;  *see id.*, Exh. F (April 23, 2020 email from Carelli to Grazi).  Rigz issued an initial purchase order to JGX on April 27, 2020—for 331,250 bottles of hand sanitizer—via an email which also requested that the bottles "have our Urbane logo" on them.  TPC, Exh. 1 (email purchase order from Carelli); *id.* ¶¶ 30-33; *see also* SAC ¶¶ 94-97.  The JGX Defendants allege that they relied on the Rigz Parties' representations "to mean that Rigz owned the URBANE logo or Rigz was authorized to use the URBANE logo." TPC ¶ 39.  Plaintiffs, however, allege that the JGX Defendants knew—at least by May 2020—that Coronado was the registered owner of the URBĀNE marks, yet they persisted in furthering the counterfeiting scheme.  SAC ¶¶ 103-104; *see also* Dkt. 341, Exh. 4 (May 26, 2020 email from Nouri Jaradeh to Grazi with "Coronado Distribution Company, Inc." in the subject line and "look them up" in the email body).

According to Plaintiffs, the Counterfeit Product came in near-identical packaging, SAC ¶¶ 91, 107, but unlike true URBĀNE Brand hand sanitizer, the Counterfeit Product was manufactured in Mexico and contained methanol—"a substance that can be toxic when absorbed

through the skin and can be life-threatening when ingested," *id.* ¶¶ 8, 291, 302.  The scheme was exposed when the U.S. Food and Drug Administration ("FDA") seized a shipment of the Counterfeit Product being delivered to the United States from Mexico.  *Id.* ¶¶ 299-300.  The FDA then placed URBĀNE Brand hand sanitizer "on its list of 'hand sanitizers consumers should not use' and added the product to its 'import alert' to stop the product from entering the country."  *Id.* ¶ 303.  As a result, allege Plaintiffs, "the URBĀNE Brand is, and will continue to be, irreparably tarnished by its association with the FDA Order" and demand for URBĀNE Brand hand sanitizer has "plummeted precipitously."  *Id.* ¶¶ 315-316.

## B.    Procedural History

On August 3, 2020, Plaintiffs and Rigz entered into a settlement agreement, under which Plaintiffs "release[d] and discharge[d] Rigz *et al.* . . . and their past or present . . . customers . . . from any and all actions, claims, demands . . . and causes of action from the beginning of time to the date of this Settlement Agreement . . . arising under trademark infringement, counterfeiting, or theft of intellectual property."  Dkt. 189.

Plaintiffs commenced this action on February 5, 2021, by filing an eleven-Count Complaint that brought claims against only JGX and Liberty International Distributors, LLC ("Liberty") under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and New York common law.  Dkt. 1.  JGX answered and asserted crossclaims for equitable indemnity and equitable contribution against Liberty.  Dkt. 22.  On April 27, 2021, the Court entered a Civil Case Management Plan and Scheduling Order ("Scheduling Order"), which set the close of all discovery for September 20, 2021, and provided that "[u]nless a party amends a pleading as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1), amended pleadings may not be filed and additional

parties may not be joined except with leave of the Court," but that "[a]ny motion for leave to amend or to join additional parties shall be filed by 5/7/21." Dkt. 28 ("Scheduling Order") ¶¶ 4, 10. After conducting extensive discovery, *see Red Rock III*, 2024 WL 1243325, at *7 (describing some of the "multiple extensions of the discovery deadlines" and the "number of disputes requiring the Court's intervention along the way"), Plaintiffs moved in December 2021 for leave to amend their Complaint to add seven new defendants (one of whom was Grazi) and a negligence claim. *See* Dkt. 102. The Court granted Plaintiffs' motion at a conference held on January 27, 2022, Dkt. 118 at 21:11-12, and Plaintiffs filed their First Amended Complaint on February 10, 2022, Dkt. 122.

In early 2022, several Defendants—including JGX and Grazi—requested leave to file a motion to dismiss, previewing their intent to argue that Plaintiffs insufficiently pleaded their RICO, tortious interference, and unjust enrichment claims. Dkts. 141 (February 24, 2022 letter), 147 (March 2, 2022 letter). Plaintiffs responded to each of these pre-motion letters. Dkts. 146, 149. In the meantime, discovery continued, and so too did the parties' contentious discovery disputes, which included multiple requests by Plaintiffs for the imposition of sanctions against certain Defendants. *See Red Rock III*, 2024 WL 1243325, at *8 (describing some of the disputes).

On April 14, 2022, Plaintiffs notified the Court of their intent to seek leave to file a Second Amended Complaint and made an unopposed request for the Court to stay Defendants' requests for a briefing schedule on their anticipated motions to dismiss pending the Court's decision on Plaintiffs' request to amend. Dkts. 166, 169. On April 20, 2022, after the Court granted Plaintiffs' stay request, Dkt. 170, Plaintiffs moved for leave to amend, attaching their proposed Second Amended Complaint, Dkts. 184, 186-1. Defendants filed briefs opposing amendment on June 3, 2022, Dkts. 198, 201, and Plaintiffs replied on June 10, 2022, Dkt. 203. Then, in November 2022,

Plaintiffs requested leave to revise and refile their proposed Second Amended Complaint to make yet another addition—this time, "to incorporate newly adduced evidence stemming from defendants' discovery misconduct." Dkt. 245 at 1. The Court granted the request and provided Defendants with an additional opportunity to oppose amendment based on that revised version. Dkt. 249 at 3. Plaintiffs filed their revised proposed Second Amended Complaint on January 3, 2023, Dkt. 263, and Defendants filed replies addressing that proposed amendment on January 6, 2023, Dkts. 264-1, 266.

While briefing on the motion to amend was in progress, Rigz sought leave to move to intervene. Dkt. 187. Pursuant to the Court's briefing schedule, Dkt. 202 at 1, Rigz filed its motion on June 13, 2022, Dkts. 205-207, Plaintiffs filed their opposition to Rigz's motion on June 21, 2022, Dkt. 213, and Rigz replied on June 27, 2022, Dkt. 215. Along with several other Defendants, JGX and Grazi filed a brief in support of Rigz's intervention. Dkts. 212, 214. On February 1, 2023, the Court granted Rigz's motion, allowing permissive intervention under Federal Rule of Civil Procedure 24(b). *See Red Rock I*, 2023 WL 1468980, at *3-5. Rigz then filed an opposition to Plaintiffs' motion to amend on February 13, 2023, Dkts. 283-284, and Plaintiffs filed a sur-reply responding to Rigz on February 23, 2023, Dkt. 289-1.

Among other amendments, Plaintiffs sought to add as defendants Dib Jaradeh and Nouri Jaradeh, and further to add claims for fraudulent conveyance and alter ego/veil piercing. *See* Dkt. 263. The Court authorized those proposed amendments on May 31, 2023. *See Red Rock II*, 2023 WL 3736442, at *8-12. In its decision, the Court instructed Plaintiffs, when preparing the final version of their Second Amended Complaint, to consider and address the futility arguments that Defendants raised in opposing Plaintiffs' amendments. *Id.* at *14.

On June 14, 2023, Plaintiffs filed their Second Amended Complaint, which included sixteen Counts against various subsets of the fifteen Defendants. Against the JGX Defendants, Plaintiffs alleged twelve Counts under RICO, the Lanham Act, and New York state law. SAC ¶¶ 392-539. Plaintiffs also brought Counts alleging alter ego/veil piercing theories of liability against Grazi, Nouri Jaradeh, and Dib Jaradeh with respect to JGX, *id.* ¶¶ 569-581, and against Dib Jaradeh with respect to Isaac Import, Inc., *id.* ¶¶ 582-589. On August 11, 2023, Defendants, proceeding in four groups, moved to dismiss some or all of the Counts in the Second Amended Complaint. *See* Dkts. 333, 339, 342, 346. On March 22, 2024, the Court granted in full some of the pending motions and granted in part the others. *Red Rock III*, 2024 WL 1243325, at *1. Specifically, the Court dismissed the RICO Count as to all Defendants aside from Liberty,[3] and dismissed with prejudice in their entirety Counts Five (false advertising under the Lanham Act), Six (deceptive business practices), Eight (tortious interference with economic prospects), Ten (unjust enrichment), Twelve (negligence and gross negligence), Thirteen (fraudulent conveyance), and Fourteen through Sixteen (alter ego liability as to various groups of Defendants, including Grazi, Nouri Jaradeh, and Dib Jaradeh). *Id.* The Court denied the motion to dismiss with respect to Counts Two (trademark infringement under the Lanham Act), Three (contributory trademark infringement under the Lanham Act), Four (false designation of origin under the Lanham Act), Seven (trademark infringement under New York common law), Nine (unfair competition under

---

[3] Liberty has not appeared in this action and thus did not move to dismiss the Second Amended Complaint. In the Court's March 22, 2024 Opinion and Order, the Court provided notice to Plaintiffs of its intent to *sua sponte* dismiss their civil RICO claims in Court One against Liberty, and afforded Plaintiffs the opportunity to argue against that dismissal. *Red Rock III*, 2024 WL 1243325, at *21. On May 8, 2024, after Plaintiffs failed to present any such arguments, the Court dismissed Count One as to Liberty for the reasons stated in its Opinion and Order. Dkt. 397.

New York common law), and Eleven (dilution by tarnishment)—all of which were asserted against, among others, the JGX Defendants. *Id.*

Subsequently, on April 8, 2024, the JGX Defendants filed their answer to the Second Amended Complaint, along with cross-claims against the other remaining Defendants and their Third-Party Complaint against the Rigz Parties. Dkt. 381. In the Third-Party Complaint, the JGX Defendants bring three Counts against the Rigz Parties: Count One asserts a claim for fraudulent misrepresentation, TPC ¶¶ 44-50, Count Two asserts a claim for equitable indemnification and/or contribution, *id.* ¶¶ 51-59, and Count Three asserts a claim for declaratory judgment on the equitable indemnification and contribution issue, *id.* ¶¶ 60-63. Notwithstanding the Scheduling Order's May 7, 2021, deadline for any motion to join additional parties, Scheduling Order ¶ 4, the JGX Defendants filed the Third-Party Complaint without first seeking leave of the Court to do so. The Rigz Parties moved to dismiss the Third-Party Complaint on July 5, 2024. Dkts. 410, 410-1 ("Motion"); *see also* Dkt. 416-1 (brief with corrected tables of contents and authorities). The JGX Defendants filed their joint opposition on July 29, 2024, Dkt. 413 ("Opposition"), and the Rigz Parties replied on August 5, 2024, Dkt. 415 ("Reply").

## II. Discussion

The Rigz Parties move to dismiss the Third-Party Complaint as deficient under Federal Rule of Civil Procedure 16, Motion at 10-17, and separately as deficient under Rule 14, *id.* at 17-25.[4] They make the same arguments with respect to all of the JGX Defendants, but the Court separately evaluates their arguments as applied to JGX and as applied to Grazi, Dib Jaradeh, and Nouri Jaradeh (the "Individual Defendants"). The JGX Defendants request that the Court evaluate

---

[4] As noted at *supra* n.1, although the Rigz Parties cite Rule 12 in their motion, they do not argue for dismissal of the Third-Party Complaint under Rule 12(b)(6). *See generally* Motion.

the pending motion "both as a motion [by the JGX Defendants] for leave to file an amended answer with the third[-]party complaint as well as a motion to dismiss" by the Rigz Parties. Opposition at 7 n.2. As discussed, the Court treats the filings as a motion by JGX for leave to file the Third-Party Complaint, and as a motion by the Rigz Parties to strike the Third-Party Complaint to the extent brought by the Individual Defendants.

## A.    JGX

The Court begins by assessing JGX's request for leave to file the Third-Party Complaint against the Rigz Parties. As mentioned above, JGX was a Defendant in this case when the Scheduling Order was entered, which set a deadline of May 7, 2021, for motions to join additional parties. Scheduling Order ¶ 4. The Court therefore considers its application to file the Third-Party Complaint, approximately thirty-five months after that deadline, pursuant to Federal Rule of Civil Procedure 16.

### 1.    Legal Standard

After a court has entered a scheduling order, a party requesting leave to implead a third party must show "good cause" if the deadline to add parties to the litigation has passed. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may by modified only for good cause and with the judge's consent."); *N.Y. Bay Cap., LLC v. Cobalt Holdings, Inc.*, No. 19 Civ. 3618 (GHW), 2020 WL 3181661, at *2 (S.D.N.Y. June 12, 2020) ("Rule 16's good cause standard applies to motions to implead if the case management order sets a deadline for such motions."); *Dos Santos v. Terrace Place Realty, Inc.*, 433 F. Supp. 2d 326, 336 (S.D.N.Y. 2006) (applying the "good cause" standard to a motion to implead a third party after the scheduling order deadline). The Second Circuit has explained that Rule 16(b) was "designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (internal quotation marks omitted).

"'A party's lack of diligence and absence of good cause for such a delay' is grounds for a court to deny a motion to implead a third-party defendant as untimely." *iBasis Glob., Inc. v. Diamond Phone Card, Inc.*, 278 F.R.D. 70, 76 (E.D.N.Y. 2011) (quoting *Dos Santos*, 433 F. Supp. 2d at 336). The burden of demonstrating diligence in seeking to extend the deadlines set in a scheduling order falls on the moving party. *See Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 175 (S.D.N.Y. 2014). "And 'the primary consideration,' although 'not the only consideration,' is 'whether the moving party can demonstrate diligence.'" *Red Rock II*, 2023 WL 3736442, at *7 (alterations adopted) (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)). If the moving party "seeks to add claims based on facts it knew or should have known at the time of the [relevant] deadline, it likely failed to act with sufficient diligence to satisfy Rule 16(b)." *Blake Marine Grp., LLC v. Frenkel & Co.*, 425 F. Supp. 3d 330, 335 (S.D.N.Y. 2019).

### 2. Application

The Scheduling Order in this action provides that "additional parties may not be joined except with leave of Court" and "[a]ny motion for leave . . . to join additional parties shall be filed by 5/7/21." Scheduling Order ¶ 4. The Third-Party Complaint was filed on April 8, 2024—almost three years after the deadline to join additional parties. Accordingly, Rule 16(b)(4)'s good cause standard applies to JGX's request to file the Third-Party Complaint. *See New York Bay Cap.*, 2020 WL 3181661, at *2.[5] As the party seeking leave to avoid the Scheduling Order's deadline, JGX

---

[5] Indeed, the parties assume that Rule 16(b)(4)'s good cause standard applies here on the theory that permitting the Third-Party Complaint would require modification of the expired deadline set in the Scheduling Order. *See, e.g.*, Motion at 10 ("[The] JGX Defendants have not acted with diligence and should not now be permitted to assert claims against the Rigz Parties"), 13 (arguing that the JGX Defendants are "[d]isclaiming their obligation to show 'good cause' to file their TPC after the Scheduling Order's deadline"); Opposition at 6-7 (arguing that "JGX had good cause for filing the TPC with its Answer to the SAC"); Reply at 9 (arguing that JGX's

bears the burden of demonstrating good cause. *Recio v. D'Almonte Enters. Parking Garage, Inc.*, No. 22 Civ 6153 (RA) (GS), 2024 WL 1433710, at *3 (S.D.N.Y. Apr. 3, 2024).

JGX has not shown good cause for its noncompliance with the deadline to seek leave to join additional parties. JGX provides only one reason for its failure to seek leave to file the Third-Party Complaint within the time prescribed by the Scheduling Order: "At the time, it was unclear whether this Court would have personal jurisdiction over the Rigz Parties," and so "the JGX Defendants intended to bring their claims for indemnification (and/or contribution), if necessary, after this Action was determined in a forum where jurisdictional issues would not be raised." Opposition at 6-7. JGX claims that it did not realize personal jurisdiction over the Rigz Parties would lie in this forum until, at the earliest, "in or about October-November 2021," when JGX learned "that the Rigz Parties shipped goods in issue in this Action to New York and worked directly with retail store customers located in New York." *Id.* at 8. JGX further maintains that, once it was clear that the Rigz Parties would be subject to jurisdiction in New York, "the JGX Defendants included the TPC at their first opportunity, when filing [their] answer to the SAC." *Id.*

JGX, by its own admission, originally intended to bring any claims for indemnification or contribution against the Rigz Parties at the close of this action. *See id.* at 6-7. JGX thus acknowledges that it was aware of its potential claims against the Rigz Parties at the outset of this litigation—when it filed its original answer on March 24, 2021, Dkt. 22. Opposition at 6-7 ("JGX did not include a third-party complaint against the Rigz Parties with its original answer. At the time, it was unclear whether this Court would have personal jurisdiction over the Rigz Parties. . . . Given the anticipated difficulty in bringing the claims against Rigz in New York, the JGX

---

justification for waiting to file the Third-Party Complaint "falls short of Rule 16's good cause standard").

Defendants intended to bring their claims for indemnification (and/or contribution), if necessary, after this Action was determined in a forum where jurisdictional issues would not be raised." (citations omitted)).  It was only later that JGX changed its mind and decided to try to pursue its claims against Rigz as part of this case.  "[A] change in litigation strategy," however, is "not compatible with a finding of diligence and do[es] not provide a basis for relief."  *Furry Puppet Studio Inc. v. Fall Out Boy*, No. 19 Civ. 2345 (LJL), 2020 WL 4978080, at *1 (S.D.N.Y. Feb. 24, 2020).  In other words, that JGX changed its mind about pursuing its claims against the Rigz Parties in this action as opposed to in another venue is not good cause for modifying the Court's Scheduling Order and permitting JGX to implead the Rigz Parties, almost three years after the deadline to seek leave to do so.

Moreover, JGX's justification for its change of heart—that it originally "perceived jurisdictional issues in bringing the claims against the Rigz Parties . . . in New York," Dkt. 414 (declaration of Yvette Sutton) ¶ 3—does not constitute good cause for modifying the deadline in the Scheduling Order.  A "finding of 'good cause' depends on the diligence of the moving party," *Parker*, 204 F.3d at 340, and "courts have found good cause to be lacking where . . . the moving party 'had knowledge of the facts and circumstances in the case for a period of several years and could have made their motion within the specified time period,'" *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 607 F. Supp. 2d 600, 602 (S.D.N.Y. 2009) (citation omitted) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 150 (S.D.N.Y. 2003)).  Even where a party brings its motion to amend mere "days after learning the alleged new facts," it cannot demonstrate good cause when it "had notice of," or was not "diligent in discovering, the alleged new facts."  *Rococo Assocs., Inc. v. Award Packaging Corp.*, No. 06 Civ. 975 (JS), 2007 WL 2026819, at *3 (E.D.N.Y. July 9, 2007) (citing *Parker*, 204 F.3d at 340).

Applying these principles, the Court is not persuaded by JGX's argument that it filed "the TPC at [its] first opportunity" once it learned that "Rigz shipped product to New York and processed returns . . . from retail store locations in New York."  Opposition at 8.  JGX learned of those facts in October or November 2021, *id.*, but it did not file the Third-Party Complaint until April 8, 2024—approximately two-and-one-half years later.  The Court cannot reasonably say that JGX acted with the requisite diligence by waiting two-and-one-half years to implead the Rigz Parties, even if Plaintiffs' motions to amend and JGX's motion to dismiss the operative complaint were pending for some of that time.  *See* Dkts. 102 (Plaintiffs' December 23, 2021 motion to file a First Amended Complaint), 118 (transcript of January 27, 2022 hearing at which the Court granted the Plaintiffs leave to amend), 184 (Plaintiffs' May 20, 2022 motion to file a Second Amended Complaint), 308 (the Court's May 31, 2023 Opinion and Order granting Plaintiffs' motion), 340 (JGX Defendants' August 11, 2023 motion to dismiss the Second Amended Complaint), 373 (the Court's March 22, 2024 Opinion and Order resolving the motion to dismiss).

JGX also cannot show that it was diligent in seeking to ascertain whether the Rigz Parties would be subject to personal jurisdiction in New York.  The email communications attached to the Third-Party Complaint belie JGX's claim that it could not have known sufficient facts to assess the "perceived jurisdictional issues" prior to October or November 2021.  The JGX Defendants submitted, along with the Third-Party Complaint, an email from Carelli to JGX with a purchase order, dated April 27, 2020, for 331,250 bottles of the Counterfeit Product.  TPC, Exh. 1.  As part of that purchase order, JGX instructed Carelli to wire payment to JGX, and provided the company's New York City address.  *Id.*; *see also* TPC ¶ 7 ("At all relevant times herein, JGX is and was a domestic limited liability company organized and existing under the laws of the State of New York, with offices located at 1407 Broadway, Suite 2116, New York, NY 10018.").  The

claims that JGX asserts against the Rigz Parties in the Third-Party Complaint arise out of this very transaction—JGX brings claims for indemnity and/or contribution and for fraudulent misrepresentation because, as part of that transaction, the Rigz Parties allegedly represented that Rigz was the rightful owner of the URBĀNE marks.  *See* TPC ¶¶ 31-33, 45, 54 (relying on the purchase order email as evidence of the Rigz Parties' misrepresentation, and basing their claims for relief on that misrepresentation).  As such, based on this evidence alone, there is a plausible argument that Rigz is subject to personal jurisdiction in New York under the State's long-arm statute.  *See* N.Y. C.P.L.R. § 302(a)(1); *Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1, 7 (N.Y. 2016) ("The CPLR 302(a)(1) jurisdictional inquiry is twofold: under the first prong the defendant must have conducted sufficient activities to have transacted business in the state, and under the second prong, the claims must arise from the transactions."); *Ralph Lauren Corp. v. CSR Grp., Inc.*, No. 16 Civ. 3387 (RJS), 2016 WL 4919961, at *3 (S.D.N.Y. Sept. 14, 2016) (finding that the plaintiff had made a *prima facie* showing of personal jurisdiction over the defendant because it "knowingly projected itself into New York by placing purchase orders and negotiating with [the plaintiff's] employees based in New York").[6]  JGX was not "diligent in discovering" facts sufficient to support an argument that the Rigz Parties would be subject to personal jurisdiction in New York, and thus

---

[6] Of course, the Due Process Clause also places limits on a court's exercise of personal jurisdiction.  *See Ehrenfeld v. Mahfouz*, 489 F.3d 542, 547 (2d Cir. 2007) ("[E]ven if the New York Court of Appeals concludes that personal jurisdiction is proper under § 302(a)(1) of the New York long-arm statute, this Court must make the ultimate determination whether this jurisdiction satisfies constitutional due process.").  As the Second Circuit has noted, however, "[i]t would be unusual, indeed, if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of section 302(a)(1), and yet, in connection with the same transaction of business, the defendant cannot be found to have purposefully availed itself of the privilege of doing business in the forum and to have been able to foresee being haled into court there, or the assertion of specific jurisdiction would somehow otherwise offend traditional notions of fair play and substantial justice."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013) (alterations adopted and internal quotation marks omitted).

fails to demonstrate good cause for modifying the Court's deadline to seek leave to implead the Rigz Parties.

Accordingly, the Court denies JGX leave to file the Third-Party Complaint against the Rigz Parties.

**B.    The Individual Defendants**

The Court turns now to the Rigz Parties' motion as applied to the Individual Defendants. The Rigz Parties and the JGX Defendants disagree over whether the Individual Defendants are bound by the Scheduling Order, given that they were not yet parties to the case at the time it was entered. *See* Motion at 14; Opposition at 6. The Court need not resolve that dispute, however, because, as the Rigz Parties argue, impleader of them by the Individual Defendants fails under Federal Rule of Civil Procedure 14. The Court thus construes this portion of the Rigz Parties' motion as one to strike the Third-Party Complaint under Rule 14(a)(4) and grants that motion.

**1.    Legal Standard**

Rule 14 provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). The third-party plaintiff must obtain the court's leave if "it files the third-party complaint more than 14 days after serving its original answer." *Id.* But "the right to implead third parties is not automatic, and the decision whether to permit impleader rests within the sound discretion of the district court." *Consol. Rail Corp. v. Metz*, 115 F.R.D. 216, 218 (S.D.N.Y. 1987); *see* Fed. R. Civ. P. 14(a)(4) ("Any party may move to strike the third-party claim, to sever it, or to try it separately.").[7] Generally, "timely motions for leave to implead third parties should be freely

_____

[7] The Court retains discretion over whether to permit impleader even when even when the third-party complaint was filed within the fourteen-day time period described in Rule 14. Wright & Miller, *supra*, § 1443; Fed. R. Civ. P. 14 advisory committee's note to 1963 amendment

granted unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim." *Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 240 (S.D.N.Y. 2004) (alteration adopted and internal quotation marks omitted). When determining whether to permit the filing of a third-party complaint, courts may consider whether the movant deliberately delayed or was derelict in filing the motion, whether impleader would result in prejudice to any of the parties or would delay or unduly complicate the trial, and whether the proposed third-party complaint states a cause of action upon which relief can be granted. *See Cowie v. SodexoMagic LLC*, No. 20 Civ. 3151 (JPC), 2021 WL 11709765, at *1 (S.D.N.Y. Feb. 15, 2021); *State Mut. Life Assur. Co. v. Arthur Andersen & Co.*, 65 F.R.D. 518, 521 (S.D.N.Y. 1975). The exercise of the court's "considerable discretion" is guided primarily by the balance between "the benefits derived from impleader" and "the potential prejudice to the plaintiff and third-party defendants." *Too, Inc. v. Kohl's Dep't Stores, Inc.*, 213 F.R.D. 138, 140 (S.D.N.Y. 2003) (internal quotation marks omitted).

### 2.    Application

Any interests of judicial economy that may be furthered by permitting the Individual Defendants to implead the Rigz Parties are outweighed by the delay such impleader would cause, as well as the prejudice that Plaintiffs would face. The usual benefits derived from impleader— the elimination of "circuitous, duplicative actions," *Nova Prods.*, 220 F.R.D. at 240 (internal quotation marks omitted)—are strongest when a defendant seeks to implead a third party at the

---

(explaining that a court's discretion to allow a third-party claim is "applicable not merely to the cases covered by the amendment where the third-party defendant is brought in without leave, but to all impleaders under the rule"). When a party moves to strike a third-party complaint under Rule 14(a)(4), as construed here, courts must exercise that discretion and decide whether to permit the third-party complaint. *See, e.g.*, *Ye v. Gold Scollar Moshan PLLC*, No. 14 Civ. 7683 (JFK), 2016 WL 7118286 (S.D.N.Y. Dec. 6, 2016).

outset of the litigation. Timely impleader saves judicial and party resources by, for example, avoiding "the time and cost of a reduplication of evidence." *Dery v. Wyer*, 265 F.2d 804, 806 (2d Cir. 1959) (internal quotation marks omitted). Those benefits are naturally diminished where, as here, discovery has closed and the Third-Party Complaint was filed over three years after the start of this suit. *See* Dkt. 425 (providing for the close of all discovery by January 31, 2025).

Permitting impleader at this stage of litigation would require the Court to reopen discovery concerning the new claims against the Rigz Parties and would further delay resolution of a case that has been pending since early 2021. Recognizing the need for this litigation to progress, the Court informed Plaintiffs that the Second Amended Complaint was their "final opportunity to amend the[] Complaint" by adding claims or parties. *Red Rock II*, 2023 WL 3736442, at *14. Now, almost one year later, with the parties and claims having been set, allowing impleader of the Rigz Parties would unduly delay bringing this case to a close. If the Rigz Parties were to be impleaded, they would be entitled to reopen discovery, including the depositions of the JGX Defendants, and to make any appropriate dispositive motions. This considerable resulting delay weighs strongly against allowing the Individual Defendants to implead the Rigz Parties. *See Lupia v. N.J. Transit Rail Operations, Inc.*, No. 21 Civ. 11077 (LJL), 2022 WL 16549227, at *3 (S.D.N.Y. Oct. 31, 2022) (concluding that impleader "would unduly delay and complicate the trial of this action without providing any appreciable benefits in terms of judicial efficiency" in part because "there would be a need for additional discovery," including the reopening of depositions, when "[d]iscovery has been completed," and because "[t]rial of the case likely would be delayed for a year, or more"); *Ye*, 2016 WL 7118286, at *3 (denying impleader in part because "further delay would likely ensue" from "additional discovery and motions practice" in a case where discovery, other than depositions, had already concluded); *Dunlop-McCullen v. Pascarella*, No.

97 Civ. 195 (PKL), 2002 WL 31521012, at *26 (S.D.N.Y. Nov. 13, 2002) (denying leave to implead because "adding parties" to a case that had been pending for four years "would certainly delay the trial considering discovery is finished"); *Middle Mkt. Fin. Corp. v. D'Orazio*, No. 96 Civ. 8138 (SWK) (HBP), 1998 WL 872412, at *2 (S.D.N.Y. Dec. 15, 1998) (denying impleader in part because "[g]ranting the motion would require the reopening of discovery and the continuation of all depositions previously completed," as well as the opportunity for the third-party defendants "to make any dispositive motions they deemed appropriate," and collecting cases to that effect); *Embassy Elecs., Ltd. v. Lumbermens Mut. Cas. Co.*, 108 F.R.D. 418, 421 (S.D.N.Y. 1985) (denying impleader because "[d]iscovery is close to completion in this action that has been pending for over one year," and "[t]he addition of another party at this time would delay the case and be prejudicial to plaintiff").

Moreover, granting the Rigz Parties' motion would not "substantially prejudice" the JGX Defendants' rights, "since [they are] not precluded from commencing a separate action" against the Rigz Parties to seek contribution or indemnification if the JGX Defendants "ultimately [are] found liable to [P]laintiff[s]." *Embassy Elecs.*, 108 F.R.D. at 421; *see also Lupia*, 2022 WL 16549227, at *3 (denying a motion to file a third-party complaint where the defendant "can seek contribution or indemnification from the third parties in a separate action in the event that Plaintiff recovers" (alteration adopted and internal quotation marks omitted)).  On the other hand, Plaintiffs would be prejudiced by permitting impleader because, as noted, adding the proposed new claims would "significantly delay the resolution of the dispute." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).  That prejudice is one reason why, generally, "impleader should be denied if it 'will greatly delay the trial.'" *Hicks v. Long Island R.R.*, 165 F.R.D. 377, 380 (E.D.N.Y. 1996) (quoting *Spaulding v. Parry Navigation Co.*, 10 F.R.D. 290, 291 (S.D.N.Y. 1950)).

Finally, the Court doubts that, in the Third-Party Complaint, the Individual Defendants "state[] . . . claim[s] upon which relief can be granted." *Cowie*, 2021 WL 11709765, at *1 (internal quotation marks omitted).  This aspect of the Rule 14 inquiry closely tracks "the analysis of whether dismissal is warranted for 'failure to state a claim upon which relief can be granted' under Rule 12(b)(6)." *Melito v. Am. Eagle Outfitters, Inc.*, No. 14 Civ. 2440 (VEC), 2016 WL 6584482, at *2 (S.D.N.Y. Nov. 7, 2016).  As mentioned previously, the Individual Defendants assert claims for fraudulent misrepresentation, equitable indemnification and/or contribution, and declaratory judgment that they are entitled to indemnification and/or contribution.  TPC ¶¶ 44-63.

The Rigz Parties argue that "any fraudulent misrepresentation claim belongs to JGX—not its members," and so the Individual Defendants "cannot individually pursue claims that belong to [JGX]."  Motion at 22-23 (internal quotation marks omitted).  It is well established that, generally, "[a] shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation." *Jones v. Niagara Frontier Transp. Auth. (NFTA)*, 836 F.2d 731, 736 (2d Cir. 1987); *see also Ali v. N.Y.C. Env't Control Bd.*, 670 F. App'x 26, 27 (2d Cir. 2016) (explaining that "an LLC and its owner or members are not interchangeable for the purposes of standing," and that "[a]n individual lacks standing to sue when the alleged injury is based on an injury to a corporate entity").  Of course, when an "individual suffers an injury personal to him and no other," such as the loss of personal property, "it is only the individual that may properly seek to redress his injury." *Bingham v. Zolt*, 66 F.3d 553, 562 (2d Cir. 1995).

Here, the Individual Defendants, as members of JGX, assert a claim of fraudulent misrepresentation based on harms to the company.  *See* TPC ¶¶ 10, 12, 14 (alleging that Grazi, Dib Jaradeh, and Nouri Jaradeh are members of JGX).  The Third-Party Complaint alleges that "[i]n reliance on [the Rigz Parties'] representations, JGX proceeded to order hand sanitizer bearing

the URBANE logo for sale to Rigz." *Id.* ¶ 40.  The Third-Party Complaint nowhere alleges that the Individual Defendants separately relied on the misrepresentations to their own personal detriment.  *See generally id.*  As such, any harm stemming from that reliance flows to JGX as a corporate entity, and not to the Individual Defendants as its members.  The Individual Defendants respond by arguing that they "were all parties to the pertinent communications that contained the fraudulent misrepresentation," and that they "spoke with Carelli . . . concerning the orders to be fulfilled by JGX for Rigz."  Opposition at 20.  They argue that "[u]nder these circumstances, it is appropriate for the Individual Defendants to seek redress for their injuries."  *Id.*  That the Individual Defendants acted on behalf of JGX, however, does not transform JGX's corporate injury into a personal injury of the Individual Defendants.  Nor does this case appear to present a situation where JGX is a mere alter ego of the Individual Defendants, in which case an injury to the corporate entity might constitute an injury to its individual member.  *See Red Rock III*, 2024 WL 1243325, at *41 ("Plaintiffs have failed to allege sufficient facts to justify piercing the corporate veil with respect to . . . JGX."); *cf. Nu-Chan, LLC v. 20 Pine St. LLC*, No. 09 Civ. 477 (PAC), 2010 WL 3825734, at *4 (S.D.N.Y. Sept. 30, 2010) (cited by the JGX Defendants, Opposition at 20, holding that a member had standing to sue for an LLC's injuries when they were "one and the same" and "the LLC was merely the 'alter ego' of the individual member").  If a company's member does not plead "a direct individual injury," that individual "lacks standing to sue for an injury to the company."  *Liberty Sackets Harbor LLC v. Vill. of Sackets Harbor*, 776 F. App'x 1, 3 (2d Cir. 2019).  It therefore appears that the Individual Defendants have not plausibly stated a claim for fraudulent misrepresentation in the Third-Party Complaint.

The Third-Party Complaint also appears to fail to state a claim for indemnity or contribution.  The Individual Defendants concede that "there is no right to indemnity or

contribution for Lanham Act Claims." Opposition at 13. They argue only that they "may be permitted to seek indemnification and/or contribution from the Rigz Parties if they are found liable to Plaintiffs for one of Plaintiffs' New York common law claims." *Id.* It is well settled, however, that under New York law "a settling tort-feasor can neither obtain, nor be liable for, a contribution claim." *Rosado v. Procter & Schwartz*, 484 N.E.2d 1354, 1356 (N.Y. 1985); N.Y. Gen. Oblig. Law § 15-108(b). Because the Rigz Parties settled with Plaintiffs, *see* Dkt. 189, it appears that they cannot be liable to the Individual Defendants for a contribution claim.[8]

The Individual Defendants' claim for indemnification is "not barred" by Section 15-108, however. *Rosado*, 66 N.Y.S.2d at 24. The Individual Defendants contend that they are entitled to indemnity under an "implied contract theory" that "is based on the special nature of a contractual relationship." Opposition at 13; *see Rosado*, 66 N.Y.S.2d at 24 ("Indemnity . . . arises out of a contract which may be express or may be implied in law to prevent a result which is regarded as unjust or unsatisfactory." (internal quotation marks omitted)). The Individual Defendants do not argue that they possess an express contractual right to indemnification from the Rigz Parties, only that New York's Uniform Commercial Code "§ 2-312 provides an implied contract theory of

---

[8] The Individual Defendants argue that the Rigz Parties' settlement with Plaintiffs may not have been entered into in good faith, as is required by Section 15-108. *See* Opposition at 14-15; N.Y. Gen. Oblig. Law § 15-108(b) ("A release *given in good faith* by the injured person to one tortfeasor . . . relieves him from liability to any other person for contribution . . . ."). This argument is borderline frivolous. The Third-Party Complaint lacks a single allegation of collusion or evidence of bad faith between Plaintiffs and the Rigz Parties. *See Torres v. State*, 413 N.Y.S.2d 262, 263 (4th Dep't 1979) ("The State has shown no fact to support its assertion that this release was given in bad faith and there is no evidence of collusion. Therefore, no triable issue of fact is presented as to the good faith of the release."); *see also Ades v. Deloitte & Touche*, No. 90 Civ. 4959 (RWS), 1993 WL 362364, at *18 (S.D.N.Y. Sept. 17, 1993) ("A 'collusive' settlement is one where the injured party releases a[] 'wrongdoer for a small amount in return for the promise of that wrongdoer to cooperate improperly with the injured person in an attempt to extract from the remaining wrongdoers more than the equitable share of the damages attributable to them.'" (quoting *Friend v. Dibble*, 475 N.Y.S.2d 765, 766 (N.Y. Sup. Ct. 1984))).

liability from Rigz *to JGX*." Opposition at 14 (emphasis added). To be sure, Section 2-312(3) provides that "a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications," N.Y. U.C.C. § 2-312(3), and the Individual Defendants claim that "the Rigz Parties furnished *JGX* with specifications to utilize their URBANE label and a specific UPC code on products sold *by JGX* to Rigz," Opposition at 14 (emphases added). Although Section 2-312 may provide an implied right to indemnification, *see Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 98 F. Supp. 2d 480, 489 (S.D.N.Y. 2000), the *Individual Defendants* (as opposed to JGX) were not the "seller[s]" of the Counterfeit Products, and they, as individuals, have no contract with the Rigz Parties within which such a right to indemnification may be implied, *see, e.g.*, TPC ¶¶ 31 ("Amongst other terms, it was established that Rigz would provide 'its' label to *JGX* for use on the hand sanitizer ordered from *JGX*." (emphases added)), 41 ("In or about May, 2020, *JGX* . . . successfully supplied approximately Two-Hundred and Eighteen Thousand (218,000) bottles of two (2) ounce URBANE labelled hand sanitizer to Rigz . . . ." (emphasis added)). Accordingly, the Individual Defendants do not appear to state a plausible claim for indemnification in the Third-Party Complaint.

Finally, in the Third Claim for Relief, the Individual Defendants "request declaratory judgment that [the Rigz Parties] are required to provide for full or partial indemnification and/or equitable contribution in connection with any liability that may be adjudged against the JGX Parties." TPC ¶ 62. The claim for declaratory judgment completely parallels the claim for indemnification and/or contribution, and merely seeks a declaration of the same rights and obligations. For the same reasons just discussed, the Individual Defendants appear to fail to state a claim for declaratory judgment in the Third-Party Complaint. *Cf. Obra Pia Ltd. v. Seagrape*

*Invs. LLC*, No. 19 Civ. 7840 (RA), 2020 WL 5751195, at *17 (S.D.N.Y. Sept. 25, 2020) ("[W]here a plaintiff's substantive claims are dismissed, a claim for a declaratory judgment—asserted as a separate cause of action—is properly dismissed as well." (collecting cases)).

Ultimately, "[t]o permit impleader [here] would complicate rather than simplify and would delay rather than speed termination of the litigation." *Royal Ins. Co. v. Cathy Daniels, Ltd.*, 116 F.R.D. 670, 671 (S.D.N.Y. 1987). Impleading the Rigz Parties would unduly delay and complicate this action and would cause prejudice to Plaintiffs, while the Third-Party Complaint appears to fail to state any claim by the Individual Defendants upon which relief can be granted. With the balance of factors tipping decidedly against allowing the Individual Defendants to implead the Rigz Parties, the Court grants the Rigz Parties' motion—properly construed as a motion to strike the Third-Party Complaint under Rule 14(a)(4)—as applied to the claims brought by the Individual Defendants.

### III.  Conclusion

"At some point all litigation must end." *Jimenez v. U. S. Dist. Ct. for S. Dist. of Fla., Miami Div.*, 84 S.Ct. 14, 19 (1963) (Goldberg, J., in chambers). The Federal Rules of Civil Procedure thus provide "certainty in pretrial proceedings" by providing a time at which "both the parties and the pleadings will be fixed." *Parker*, 204 F.3d at 340 (internal quotation marks omitted). That time is now.

For the reasons provided above, the Court strikes the Third-Party Complaint in its entirety.[9] The JGX Defendants shall re-file their Answer and Crossclaim, without any third-party claims against the Rigz Parties, by February 25, 2025.  The Clerk of Court is respectfully directed to strike the entry at Docket Number 381 and to terminate the motion pending at Docket Number 410.

SO ORDERED. Dated:

February 17, 2025
New York, New York

_____
JOHN P. CRONAN
United States District Judge

---

[9] Although the Rigz Parties moved to dismiss the Third-Party Complaint, as discussed above, the Court construes the parties' filings as an opposed motion by JGX for leave to file the Third-Party Complaint, as well as a motion by the Rigz Parties to strike the Third-Party Complaint as brought by the Individual Defendants under Rule 14(a)(4).  *See supra* n.1; *see also* Opposition at 7 n.2 (requesting that the Court evaluate the motion "as a motion for leave to file an amended answer with the third[-]party complaint").  The Court grants the Rigz Parties' motion to strike as applied to the Individual Defendants' claims and denies JGX leave to file the Third-Party Complaint.  Because JGX filed the Third-Party Complaint without first obtaining the Court's leave, the proper remedy is to strike JGX's unauthorized pleading.  *See, e.g.*, *Bizouati v. City of N.Y.*, No. 05 Civ. 4133 (RJD) (MDG), 2008 WL 753886, at *2 (E.D.N.Y. Mar. 19, 2008) (striking an amended complaint that was filed without leave and after the scheduling order deadline because the plaintiff failed to establish "good cause" under Rule 16).